```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NEELAM UPPAL,

               Plaintiff,

          v.                         16 CIV 3038(VSB)

NYS DEPARTMENT OF HEALTH, et
al.,

               Defendants.

------------------------------x
                                     New York, N.Y.
                                     July 29, 2016
                                     11:30 a.m.

Before:

               HON. VERNON S. BRODERICK,

                                     District Judge

                    APPEARANCES

RUDY A. DERMESROPIAN, ESQ.
     Attorney for Plaintiff

OFFICE OF THE ATTORNEY GENERAL
     Attorneys for Defendants
BY:  JAMES M. HERSHLER
```

1          (In open court; case called)
2          THE COURT:  If the parties could identify themselves
3   for the record.
4          MR. DERMESROPIAN:  Good morning, your Honor.  Rudy
5   Dermesropian for the plaintiff.  To my right is the plaintiff
6   Dr. Uppal.
7          THE COURT:  Good morning.
8          MR. DERMESROPIAN:  Good morning.
9          MR. HERSHLER:  Good morning.  James Hershler of the
10  New York State Attorney General's Office for the defendant New
11  York State Department of Health.
12         THE COURT:  Good morning.  You may be seated.
13         Counsel, you should feel free to remain seated or you
14  can stand if you wish to address me during this conference of
15  the.
16         Let me review for the parties what I have in
17  connection with today's conference.  I have the order to show
18  cause, which was entered on April 27th.  I have the plaintiff's
19  letter dated June 27th.  I have the defendant's letter dated
20  July 7th with various attachments.
21         Are there any documents that I am missing,
22  Dr. Dermesropian?
23         MR. DERMESROPIAN:  Not from my side, your Honor.  I
24  would like maybe clarification because I believe there was
25  multiple filings and I think the last filing is significantly

1  larger than the previous ones.  I just want clarification as to

2  which one applies and why there were so many filings.

3          THE COURT:  Well, I am not sure exactly.  The document

4  that I am referring to has a letter from Mr. Hershler, Exhibits

5  A through C, and affirmation of Timothy Mahar dated July 6th,

6  and Exhibits A and B to that affirmation.

7          MR. DERMESROPIAN:  Right.  There may have been some

8  error in the filing.  I wanted clarification.  Also, on that

9  note I believe, and I might be incorrect, your Honor's

10 instruction was to submit a letter, not in addition to the

11 letter as far as declarations or affirmations.  I think defense

12 went a little bit beyond the Judge's instructions.

13         THE COURT:  Let of me hear from Mr. Hershler about the

14 filings but go ahead.

15         MR. HERSHLER:  Thank you, your Honor.

16         You've correctly listed what we filed, which my letter

17 with the three attachments and Timothy Mahar's very brief

18 affirmation with two further attachments.  The problem was

19 there was something wrong with the attachments.  When I filed

20 it and then I attempted to download a copy in order to supply a

21 courtesy copy to the Court with an ECF acknowledgment, I could

22 not download the attachments to my letter.  I tried and tried.

23 I consulted with our in-house technical staff and I consulted

24 with the Court's ECF staff.  They gave me some advice about

25 breaking up the documents, refiling.  I tried that.  I tried

1   again using further advice to rescan it using Adobe.  That
2   didn't work.
3           Ultimately my managing clerk tried to file it using a
4   different terminal thinking maybe  something was wrong with my
5   PC.  That did not work either.  Ultimately I sent everything to
6   the Court's ECF staff and said, Please, help me.  I don't know
7   what is wrong, and then they gave further advice to rescan it
8   at a lower resolution, lower DPI, which was done in my absence.
9   I went away on vacation that week.  Ultimately that solved the
10  problem.  So it looks like multiple filings.
11          Believe me it was not my intention.  I was advised to
12  remove the duplicate filings, I would have to ask for a court
13  order.  I didn't want to bother the Court with that detail.  I
14  was also unaware that I was limited just to the letter.  I
15  thought since Tim Mahar was making some factual statements, it
16  was important that he do so under declaration form.
17          THE COURT:  Mr. Dermesropian, although I understand
18  there was some confusion about the filings, did you receive all
19  the documents that I just mentioned?  Eventually as I
20  understand it, they were filed on ECF.
21          MR. DERMESROPIAN:  Ultimately I did receive them, yes,
22  your Honor.
23          THE COURT:  Let me ask this:  Why isn't the action
24  here barred by the Eleventh Amendment?  As I understand it the
25  State has not waived immunity.  So why wouldn't the action be

1    barred against the State here?

2              MR. DERMESROPIAN:  Your Honor, the way some of the
3    cases that we cited -- I cite in my letter, the way I see it is
4    there are exceptions based on that case laws cited in the
5    letter briefs submitted to the Court.  There is also exceptions
6    that would apply allowing this Court to intervene when the
7    actions of either the state officer or the state agency went
8    beyond a regular course of business at the agency.
9    Specifically there has been as we allege and is alleged in the
10   complaint actions as far as trying to harass the plaintiff and
11   trying to embarrass him publicly.

12             THE COURT:  By the New York authorities?

13             MR. DERMESROPIAN:  Yes, your Honor.  That is the
14   allegation in the case as of now because we were not able to --
15   well, we have not conducted any discovery yet so as the
16   allegation stands, yes, your Honor.

17             THE COURT:  Now, as I understand it, and I will look
18   at the cases, but it is not clear to me that there would be an
19   exception when you have an Eleventh Amendment issue and there
20   is no waiver.  It sounds like some of the arguments go to the
21   idea of more to the idea of this abstention argument.  Perhaps
22   it is helpful to get a sense of where things currently stand
23   with respect to the New York State action.  I am not sure
24   whether you know, Mr. Dermesropian, or whether it is better if
25   I ask Mr. Hershler this.  Because as I understand the process,

1    the New York authorities were on the basis of what happened in
2    Florida seeking to -- I am not sure what the correct
3    termination is, whether it is revoke, suspend or the like, but
4    the ability of your client to practice medicine in New York.  I
5    guess my question is:  Do you have an understanding of what the
6    status of whatever the New York authorities were doing, what
7    that is currently?
8             MR. DERMESROPIAN:  The status of the hearing or the
9    process in the New York City Department of Health?
10            THE COURT:  Correct.
11            MR. DERMESROPIAN:  As far as know, your Honor, I
12   mentioned in the letter that early in June I was hospitalized
13   and counsel was kind enough to adjourn the hearing of this
14   case.  Since I was hospitalized -- I will put it on the record.
15            THE COURT:  You don't need to.
16            MR. DERMESROPIAN:  Well, for various health issues and
17   I am still in the recovery process, but obviously I can be here
18   today.  My client has made a motion to request an adjournment
19   of the hearing so I can be present with her.  I did not have a
20   chance to file my notice of appearance yet because I was in the
21   hospital and then things developed.  Things were more serious
22   and out of my control to some extent.
23            So as I understand the motion in the Department of
24   Health was denied.  She had to appear without counsel and I
25   think the decision is pending.

1  THE COURT: Mr. Hershler, is that consist with your
2  understanding?
3  MR. HERSHLER: Not entirely. There was never any
4  suggestion by Mr. Dermesropian that he intended to appear for
5  Dr. Uppal in the disciplinary proceedings. That is made clear
6  in the declaration of Tim Mahar.
7  If you look at her pro se motion for an adjournment,
8  the grounds set forth is that she wanted to have this case go
9  first because it could impact the disciplinary proceedings. It
10 wasn't that she needed to be represented by Mr. Dermesropian or
11 anyone else for that matter. She appeared pro se voluntarily.
12 THE COURT: I apologize. Were you present at that?
13 Although it may not have been raised in the papers that were
14 submitted, did it come up during the actual hearing?
15 MR. HERSHLER: I have only seen a portion of the
16 transcript of the hearing. I believe there was some discussion
17 of it. I don't know the full details of it. I wasn't there.
18 These sorts of proceedings are handled by attorneys for the
19 Bureau of Possessional Medical Conduct.
20 As I mentioned in my letter if there was some defect,
21 such as inadequate representation, etc., these are things that
22 are routinely raised upon either administrative and/or court
23 review of a final determination.
24 THE COURT: An Article 78 proceeding?
25 MR. HERSHLER: That is correct. Such proceedings have

1   gone directly to the Appellate Division Third Department, and
2   the petition can seek a temporary stay pending a resolution of
3   that case.  It is not a revocation proceeding.  It is a
4   proceeding which could consider any sort of disciplinary
5   sanction ranging from revocation all the way down to a censure
6   and reprimand to nothing at all.  It all depends.  It is an
7   opportunity for the state board to talk to the physician and
8   find out whether some sort of penalty or monetary or ultimately
9   revocation is required based upon the misconduct charged.
10          THE COURT:  Let me ask this because this may be a
11  threshold issue, which is the issue of whether the Southern
12  District is the appropriate venue.  I think in connection with
13  that that the plaintiff asserts that venue was proper in the
14  Southern District of New York because Dr. Uppal's injuries
15  occurred in this district.
16          Mr. Dermesropian, what injuries are you talking about?
17          MR. DERMESROPIAN:  Mainly, your Honor, it has to do
18  with economic injuries.  It has to do with her license because
19  she practices in this county.  It has to do with her
20  reputation.  We cited to a case that actually recognizes
21  similar facts where the tortious acts took place in Maryland,
22  not even New York State.  It was the Western District of New
23  York court that was found to be the proper venue because the
24  economic damages occurred in that area.
25          If I may, your Honor, briefly address some of the

1  statements made by counsel.  My client, while I was dealing
2  with whatever health issues I was dealing with, did make a
3  written motion and she said due to emergency health issues she
4  did make the same application verbally when she went to the
5  hearing.  To answer your question the request for adjournment
6  and the reason for the request was made in writing, which is
7  attached to the defense papers as well as verbally during the
8  hearing.
9          THE COURT:  Let me hear from Mr. Hershler with regard
10 to the venue issue in particular.  The first question I have is
11 in making a venture argument are you saying that the Southern
12 District of New York is not appropriate?  In other words, I am
13 trying to distinguish between whether the venue could be
14 appropriate here and in the Northern District.  I apologize
15 because I didn't really focus on this when I was looking at
16 your papers, but let me ask that question.
17         MR. HERSHLER:  It is our position that venue is not
18 appropriate in this district because all of these substantial
19 events and parts of them occurred in the Northern District
20 where the hearing has taken place.  Although opposing counsel
21 says that Dr. Uppal is practicing in New York County, that is
22 not an allegation found anywhere in the complaint.  As a matter
23 of fact, it is clear that she is a nonresident.  She may have
24 practiced in New York County or in the Bronx or whatever in the
25 past, but she was not doing so at the time of the institution

1 of this action, which is when venue is established. A New York
2 State license is exactly that, a statewide license, which gives
3 the doctor the chance to practice anywhere in the state.
4     THE COURT: Mr. Dermesropian, let me hear from you on
5 that. Mr. Hershler is right that it is a license to practice
6 anywhere. At the time of the filing of the action, did your
7 client have a practice here in the Southern District of New
8 York and if so what was the address for that practice and how
9 often was she here practicing? I don't think that is laid out
10 in the papers.
11     MR. DERMESROPIAN: To answer your question, yes, she
12 did. It was in midtown at 1370 Broadway, Suite 504.
13     Also, I disagree with counsel for the defense that it
14 is a little bid odd because the New York City Department of
15 Health is alleging that all we have to do is rely, all they
16 have to do is rely on the investigation and the findings of the
17 State of Florida, which means the acts that brought all these
18 issues together technically happened in Florida. So there was
19 no investigation done in New York because had they done an
20 investigation, they would have determined as we allege in the
21 complaint that those "charges" brought against my client in
22 Florida were fabricated because they were initially brought
23 against another doctor. I don't want to get into the details.
24 They are relying on actions that happened in Florida.
25     THE COURT: Then your reference to Florida brings up

1  the very issue I think that the basis of the motion we're
2  talking about.  It is a Florida State action.  As I understand
3  your client there were various actions filed in Florida.  The
4  New York authorities I don't believe are under -- well, let me
5  ask this because the fact that there may have been something
6  untoward going on in Florida, how does that impact and why does
7  that impact the determination of whether or not what has
8  happened here in New York is retaliatory for my purposes
9  concerning whether abstention applies here?
10          MR. DERMESROPIAN:  Well, the actions if I understand
11 what your Honor is looking for, in Florida were somehow --
12 well, the New York State Department somehow became aware of the
13 findings in Florida and they knew because it is public record.
14 There were appeals pending of the decisions and the findings in
15 Florida.  Currently there is an appeal pending.  There was no
16 final determination yet.  The decision is being challenged as
17 we speak because of the appeal pending in Florida.
18          So the actions arose technically in a different state.
19 Now, we believe this is the proper venue.  It is my district
20 because my client practiced in this district and had been
21 practicing at the time when charges were brought.  She had her
22 own office, and we gave the address earlier, and she still
23 does.
24          THE COURT:  Did she have residence here?  Where was
25 she living when she was practicing here?

1            MR. DERMESROPIAN:  She had residence in Florida.  She

2   also had a residence in the Bronx that she stayed at while she

3   was here.

4            THE COURT:  I think I am going to need an affidavit on

5   this.  There becomes another issue.  As I understand the basis

6   for jurisdiction here, isn't it diversity?  It is diversity at

7   the time the action is filed.  What I am hearing today is that

8   she had a practice here at the time the action was filed and

9   that she may have had actually a residence here at the time the

10  action was filed.  Again, I haven't looked at the law to know

11  because she has a residence in Florida and residence here in

12  New York.

13           Am I correct?  Isn't the basis for the acting being in

14  federal court diversity?

15           MR. DERMESROPIAN:  Well, there is a federal question

16  as well, your Honor.  We believe under 42, U.S.C., 1985 and 83

17  she has -- this Court has jurisdiction over this case.  At the

18  time, yes, she did have a residence -- well, a place.  I

19  wouldn't call it a residence.  She did stay in the Bronx.  I am

20  also advised she would also stay at her mom's house in New

21  Jersey while she would come to her office in New York.

22           THE COURT:  In connection in making a venue

23  determination as I understand the argument, Mr. Dermesropian,

24  you are saying that she was somehow harmed here and that she

25  had a practice here at the time.  Again, I will ask Mr.

1    Hershler a question. I understand the licensing is a New York
2    wide licensing. But if they in fact was harm in the district,
3    that seems to me to be potentially a basis for venue. I cannot
4    even get to that point because as I understand things right now
5    I don't have, I don't believe, a statement or certainly not an
6    affidavit indicating what Dr. Uppal's connection was to the
7    Southern District of New York at the time this action was
8    filed.
9            How much time, Mr. Dermesropian, do you need to have
10   the affidavit put together? Obviously you should consult with
11   your client about that.
12           MR. DERMESROPIAN: Your Honor, so I understand your
13   Honor correctly, you just want an affidavit addressing the
14   place of residence and her place of work at the time of the
15   incident?
16           THE COURT: Correct.
17           MR. DERMESROPIAN: We can submit that by next Friday,
18   your Honor.
19           THE COURT: So in a week I will get that. I
20   understand the issues both in terms of the venue issue. In
21   terms of the Eleventh Amendment issue, as well as the
22   abstention issue. I don't think I need anything additional
23   other than the affidavit.
24           Mr. Hershler, I think I do need to hear or get a sense
25   because I had been mistakenly operating under the idea that Dr.

1   Uppal was practicing in Florida although she had a license
2   wasn't practicing at the time of the complaint.  I don't have
3   the complaint in front of me to be able to review it.
4              Let me ask you:  Are you aware of anything in the
5   current record that indicates that Dr. Uppal was practicing
6   here in the Southern District?
7              MR. HERSHLER:  No, your Honor, I am not.  I would
8   refer the Court to the complaint, paragraph 2, which states Dr.
9   Uppal has been working in New York in 2013 and 2014 even though
10  her primary residence is Pineallas Park.  Dr. Uppal was working
11  in Bronx, New York when the Florida DOH presented their case in
12  Florida.  The grammar isn't 100 percent, but its sound like she
13  was not working in New York or had her primary residence there
14  at the time the complaint was filed.  That is what we're basing
15  our argument on.
16             THE COURT:  I was in a similar position.  I need
17  clarification on this.  I do understand and I will consider the
18  allegations in the complaint.
19             Mr. Dermesropian, what I think I will need is in
20  essence a time line.  At the time the case was filed where was
21  Dr. Uppal practicing here in New York?  Where was she residing
22  here in New York?  As I understand it, it might have been in
23  the Bronx, but it could have been New Jersey.  To that end was
24  the office that she was using -- first of all, was it an
25  office?  Was it out of a medical facility?  Was that space

1  shared with another physician or some other professional?    I
2  would like to get clarification.  Also, quite frankly to the
3  extent that there is an inconsistency or one might see an
4  inconsistency with the statement that Mr. Hershler just
5  mentioned or sentences that Mr. Hershler just pointed out in
6  the complaint.  In other words you need to harmonize those if
7  you can.
8          So once I get that, I think I will have all the papers
9  I need to make the decision.  I need to get the affidavit for
10 the venue decision.
11         Is there anything else that we need to take up today,
12 Mr. Dermesropian?
13         MR. DERMESROPIAN:  Not from our side, your Honor.
14         THE COURT:  Mr. Hershler?
15         MR. HERSHLER:  I would just like to respond to one
16 point that counsel made about pendency of an appeal in Florida.
17 As we have shown in our papers, the Florida Supreme Court said
18 it would not hear any further motions or applications and that
19 it had no jurisdiction.  I just checked the Florida docket this
20 morning and the last thing on the docket is motion for
21 reconsideration denied.  So I don't think there is a pending
22 appeal in Florida.  As a matter of fact, it shouldn't matter
23 anyway.  As I explained in our papers, the two sections of the
24 education law that the charges are based upon do not require a
25 final determination in any event.  So the proceeding is

1   properly brought and I would argue that it should play out its
2   course.
3           THE COURT:  Mr. Dermesropian, if you do have
4   information that is contrary to what Mr. Hershler just
5   indicated, you should share it with him.  I think I have the
6   case law concerning whether or not -- it sounds as if the New
7   York authorities don't have to necessarily wait until something
8   is final; but putting that aside, I think there is an issue,
9   the issues related to the Eleventh Amendment and the issue
10  related to the abstention are hurdles you have to get over in
11  any event even before I get to the underlying substance.
12          Unless you can tell me, Mr. Dermesropian, that the New
13  York authorities weren't entitled to -- putting aside what the
14  allegations about complicity or whatever you mentioned earlier
15  that they weren't entitled to bring the action on the basis of
16  what was occurring in Florida.  Again, the issue about whether
17  or not Florida authorities got it right is I don't think --
18  that I think is a separate issue.
19          MR. DERMESROPIAN:  I referred to the section of New
20  York City Education Law 6530, which says when there is an
21  appeal pending, it is not considered professional misconduct
22  which is one of the definitions for professional misconduct.
23  Since it could not be considered as such, then I think the
24  proceeding in New York should not have started.  Assuming the
25  Court disagrees with that point, the procedure followed by New

1   York State court violates we believe my client's procedural
2   rights and due process rights because, one, she was not present
3   in Florida when the hearing took place which I think is
4   something she does allege in the complaint.
5        Also, the investigation and the charges brought
6   against her in New York were not based on any complaint by any
7   patient.  I think there were correspondence supported by the
8   New York City of Health, which I believe is attached to their
9   papers.  There was no actual complaint by any patient.  The
10  patients were cured by my client.  The patients themselves
11  actually said, "She helped us.  We never filed a complaint
12  against her.  She didn't do anything wrong."  Like I said
13  before, had they conducted their due diligence in their
14  investigation, they would have determined that the initial
15  charges were bought by these patients against my client's old
16  or former employer, Dr. Disi, which is also referred to in the
17  letter.
18       So there seems to be some sort of corroboration
19  between the departments in New York and Florida.  They
20  generated the charges brought here without proper investigation
21  and the hearing which should not have been held because she did
22  not have her attorney that she chose to have there present and
23  she notified them by written motion a week or two before the
24  actual hearing.  Not only do we believe it was not supposed to
25  be brought, we believe the way it was brought violated her

G7t6uppc

1  rights as well.
2          THE COURT:  So, Mr. Dermesropian, I expect to get the
3  affidavit from you a week from today.
4          MR. DERMESROPIAN:  By next Friday, yes, Judge.
5          THE COURT:  Anything else?
6          MR. DERMESROPIAN:  Not from plaintiff.
7          THE COURT:  Mr. Hershler?
8          MR. HERSHLER:  I would rest on our papers in response
9  to his points.
10         THE COURT:  Thank you for coming in.
11         MR. DERMESROPIAN:  Thank you, your Honor.
12                            o0o
13
14
15
16
17
18
19
20
21
22
23
24
25