RECEIVED
SDNY DOCKET UNIT

2017 MAR 31   AM 10: 40

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF NEW YORK

Neelam T. Uppal,                              Case No.: 1:16-CV-3038
                                              Jury trial Requested

**v.**
**FL DOH,**
**NEW YORK STATE DEPARTMENT OF HEALTH**
**ET AL**
_____ /


**ANSWER AFFIDAVIT, MEMORANDUM OF LAW FOR ORDER TO SHOW**
**CAUSE FOR INJUNCTIVE RELIEF**





AFFIDAVIT

RECEIVED
SDNY DOCKET UNIT

2017 MAR 31  AM 10: 40

NEELAM TANEJA UPPAL, being duly sworn, deposes and says:

I am the petitioner in this proceeding and make this affidavit in support of my application pursuant to

Public Health Law § 230-c(5) staying so much of the determination of the Administrative Review Board

for Professional Medical Conduct, which, upon modifying a determination of the hearing panel, revoked

my license to practice medicine in New York, to re-instate the Petitioner's medical license. Violation of

Civil Rights: Discrimination

In Dr. Uppal's civil rights case, she "asserts that she suffers from injuries as a result of her licensure

deprivations that cannot be addressed by any amount of compensatory monetary award" and is requesting

damages under Section 42 civil rights 1983 and 1985.

Violation of Civil Rights: 42 USC 1985- proficiency in English

Retaliation Against Dr. Uppal :

"The  anti-retaliation regulation provides that "[n]o recipient ... shall intimidate, threaten, coerce, or
discriminate against any individual for the purposes of interfering with any right or privilege secured by
[the Act], or because he has made a complaint, testified, assisted, or participated in any manner in an
investigation, proceeding, or hearing ..." 34 C.F.R. § 100.7(e)

Specifically discussing the retaliation claim,."

1.  On  January 31, 2017, the Administrative Review Board of New york State department of

Health issued a decision that  revoked the Plaintiff's License to practice medicine in New

York  to  discriminate against her and retaliate against her and  violate her civil rights

2. .Based upon the Florida Board of Medicine's determination, respondent State Board for Professional

Medical Conduct sought reciprocal discipline. In addition, Petitioner was charged with falsely answering

"no" to the question whether she had been subject to discipline elsewhere on her renewal application dated

January 5, 2016, even though the determination was not final until May 11, 2016, when the Second District

Court of Appeal affirmed the Florida determination (*Uppal v. Dep't of Health, Bd. of Med.*, 197 So.3d

51[Fla 2d DCA 2016]). A copy of the  order10. The determination of the ARB is not supported by

1

substantial evidence and is otherwise arbitrary and capricious. In Florida, there was a lack of notice or opportunity to be heard constituting a deprivation of due process; (2) there was an infirmity of proof presented to the foreign jurisdiction; or (3)  the conduct for which the physician was disciplined in the foreign jurisdiction does not constitute misconduct in this jurisdiction.

3.. The determination of the ARB is not supported by substantial evidence and is otherwise arbitrary and capricious. In Florida, there was a lack of notice or opportunity to be heard constituting a deprivation of due process; (2) there was an infirmity of proof presented to the foreign jurisdiction; or (3)  the conduct for which the physician was disciplined in the foreign jurisdiction does not constitute misconduct in this jurisdiction.

4. In October 2012, Petitioner fell sick and she had to close her Florida practice. On July 7, 2014. all the complaints were consolidated into one complaint. On July 14 and 15, 2016, the trial was scheduled, but she was not allowed a chance to defend herself. This, violating her constitutional rights to due process.

5.  Florida and New York Have Different Definitions of Malpractice. Florida defines medical malpractice as the failure to practice medicine in accordance with the level of care "recognized in general law related to health care licensure."  In contradistinction, New York requires physicians to possess the degree of knowledge and skill possessed by the average member of the medical profession in the community in which he or she practices.

6. The record in the Florida proceedings shows that there was a dispute among the experts on the question, Dr. Issa Ephtimios , a board certified physician in internal medicine, infectious diseases and infection control and is an attending physician at Sacred Heart Hospital, West Florida Hospital, Baptist Hospital, and Select Specialty Hospital in Pensacola, Florida.
testified as an expert for Petitioner that the care was appropriate.

7. Under New York law where parties present evidence of a choice between or among medically acceptable alternatives or diagnoses this is an error of judgment and not malpractice.

8. Insofar as the medical records are concerned, the charges were originally dismissed. . New Administrative Complaints were made on Old Medical records, after the Practice was closed, on patients whose complaints were already dropped by the Previous Prosecutors. None of these patients had been seen

since the prior complaints. Inasmuch as the prior charges were dismissed, New York would apply res judicata and the charges could not be pressed in New York.

9. Finally, and in any event, the penalty imposed by the ARB is so incommensurate with the offense as to shock one's sense of fairness. There was no basis to overturn the decision of the hearing panel on penalty. The penalty fixed by the hearing panel is consistent with the precedents of this Court. The penalty fixed by the ARB is not.

10. In cases such as this, the penalty should be presumptively reciprocal and certainly not more harsh absent some aggravating circumstance. Although I answered "no" to the question on my license renewal asking whether I had been subject to discipline elsewhere, at that time the determination was before the Second District Court of Appeal of Florida. I believed that, until that Court acted, the determination was not final and therefore my answer was accurate. See exhibit A

11. In any event, when measured against this Court's precedents in *Matter of Addei v. State Bd. Prof'l Med. Conduct* (278 A.D.2d 551 [3d Dept. 2000]), *Matter of Sarfo v. De Buono* (235 A.D.2d 938 [3d Dept. 1997]), *Matter of Colvin v. Chassin* (214 A.D.2d 854, 855 [3d Dept. 1995]) and *Matter of Sarosi v. Sobol* (155 A.D.2d 125 [3d Dept. 1990]), in all of which this Court annulled a penalty of revocation, it is evident that the penalty imposed by the ARB is so incommensurate with the offense as to shock one's sense of fairness. There was no basis to overturn the decision of the hearing panel on penalty."

12. Exhaustion of Administrative Remedies

According to NYSDOH Claim to dismiss the claims on various grounds, including "failure to exhaust ". "With respect to exhaustion, the due process request mentioned in the claims, including the retaliation claim. Although the the administrative decision did not expressly rule on those claims, the decision does not include relevant factual findings that go beyond what was necessary to find a reason for denial of Petitioner's license. Further, because of the comprehensive remedies were violated in the due process clause, further exhaustion must be excused as futile."

WHEREFORE, Petitioner requests that this Court enter an Injunctive releif and annul the determination of the ARB and hearing committee together with re-instating petioner's medical License and

any such other and further relief as this court may seem just and proper.

S. uppal

Dated _____3/ 30_____ . 2017

_____
**NEELAM UPPAL, PRO, SE**
*1370 Broadway, # 504*
*New York, NY -10018*
*PH. - (646)-740-9141*
*E-mail-*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served by

on 3a day of _March_, 2017 to: NYSDOH

TO: all Creditor via email or USPS mail

MEMORANDUM OF LAW

CIVIL RIGHTS LIABILITY UNDER 42 U.S.C. § 1983:
AN OVERVIEW OF SUPREME COURT AND ELEVENTH CIRCUIT PRECEDENT

RECEIVED
SDNY DOCKET UNIT

2017 MAR 31  AM 10: 40

INTRODUCTION AND HISTORY
42 U.S.C. § 1983, commonly referred to as "section 1983" provides:
Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or
Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or
other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity,
or other proper proceeding for redress, except that in any action brought against a judicial officer for an act
or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a
declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any
Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the
District of Columbia.

42 U.S.C. § 1983 (emphasis added).
Section 1983 was enacted on April 20, 1871 as part of the Civil Rights Act of 1871, and is also known as
the "Ku Klux Klan Act" because one of its primary purposes was to provide a civil remedy against the
abuses that were being committed in the southern states, especially by the Ku Klux Klan. While the
existing law protected all citizens in theory, its protection in practice was unavailable to some because
those persons charged with the enforcement of the laws were unable or unwilling to do so.[1] The Act was
intended to provide a private remedy for such violations of federal law, and has subsequently been
interpreted to create a species of tort liability.[2]

The number of cases that have been brought under section 1983  since 1961 when the Supreme Court
decided Monroe v. Pape.[3] In Monroe, the Supreme Court held that a police officer was acting "under
color of state law" even though his actions violated state law.[4] This was the first case in which the
Supreme Court allowed liability to attach where a government official acted outside the scope of the
authority granted to him by state law. Since Monroe v. Pape was decided, an extensive body of law has
developed to govern section 1983 claims. This article is intended to provide an overview of that extensive
body of law, and will include seminal precedent from the United States Supreme Court and the Eleventh
Circuit Court of Appeals--a comprehensive study of all law related to section 1983 is beyond the scope of
this article.

II. ELEMENTS OF A SECTION 1983 CLAIM
(i) "Every person . . ."
Only "persons" under the statute are subject to liability.[5] A state is not a person subject to suit under
section 1983,[6] but a state officer can be sued in his official capacity for prospective or injunctive relief[7]
despite the fact that an suit against a government official in his official capacity represents nothing more
than a suit against the government entity itself![8] Despite this logical inconsistency, the current state of the
law is that a state may not be sued for damages, but may be sued for declaratory or injunctive relief.
Municipalities and local governments are persons subject to suit for damages and prospective relief,[9] but
the United States Government is not.[10] Individual employees of federal,[11] state[12] and local[13]
government may be sued in their individual capacities[14] for damages, declaratory or injunctive relief.
While the determination of who is a "person" is a matter of federal statutory interpretation, the matter of
who has the capacity to be sued is determined by the law of the forum state.[15] Likewise, the law of the
forum is to be applied in actions under section 1983 where the law of section 1983 provides no
guidance.[16]

(ii) ". . . who under color of [state law][17] . . ."
The traditional definition of acting under the color of state law requires that the defendant have exercised
power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the
authority of state law,"[18] and such actions may result in liability even if the defendant abuses the position

given to him by the state.[19] A private actor may also act under color of state law under certain circumstances.[20] For example, it has been held that a physician who contracts with the state to provide medical care to inmates acts under the color of state law.[21] For all practical purposes, the "color of state law" requirement is identical to the "state action" prerequisite to constitutional liability.[22]

(iii) ". . . subjects or causes to be subjected . . ."

Section 1983 does not impose a state of mind requirement independent of the underlying basis for liability,[23] but there must be a causal connection between the defendant's actions and the harm that results.[24] In order to hold a local government liable under section 1983, the Supreme Court has interpreted this causation element to require that the harm be the result of action on the part of the government entity that implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or the result of the entity's custom.[25] Further, the entity's policy or custom must have been the "moving force" behind the alleged deprivation.[26] This "custom or policy" requirement is a dramatic departure from the rule of respondeat superior that prevails in many common law actions.[27]

A local government is said to have an unconstitutional policy when it fails to train its employees, and the failure to train amounts to deliberate indifference to an obvious need for such training, and the failure train will likely result in the employee making a wrong decision.[28] An unconstitutional policy may also exist if an isolated action of a government employee is dictated by a "final policymaker,"[29] or if the authorized policymaker approves a subordinate's decision and the basis for it.[30] However, a supervisor can only be liable in his individual capacity if he directly participates in causing the harm--relying upon respondeat superior is insufficient.[31] The Supreme Court has rejected the notion that a plaintiff must meet a heightened pleading standard to state a claim against a municipality for an unconstitutional custom or policy.[32]

(iv) ". . . [any person to] the deprivation of rights . . ."

Section 1983 is not itself a source of substantive rights, it merely provides a method for the vindication of rights elsewhere conferred in the United States Constitution and Laws.[33] Therefore, a plaintiff may prevail only if he can demonstrate that he was deprived of rights secured by the United States Constitution or federal statutes. It is beyond the scope of this article to discuss all of the rights available under the United States Constitution, nevertheless, this article will provide an overview of perhaps the most utilized of all constitutional provisions--the Fourteenth Amendment Due Process Clause [hereinafter "the Due Process Clause"].[34]

The Supreme Court has held that the Due Process Clause was not intended to supplant tort law, or to become "a font of tort law to be superimposed upon whatever systems may already be administered by the states."[35] Against this backdrop, to state a claim for a deprivation of Due Process, a plaintiff must show: (1) that he possessed a constitutionally protected property interest; and (2) that he was deprived of that interest without due process of law.[36] Due process property interests are created by "existing rules or understandings that stem from an independent source such as state law--rules or understanding that secure certain benefits and that support claims of entitlement to those benefits."[37] To have a property interest protected by the Due Process Clause, "a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[38] While the existence of a protected property interest is decided by reference to state law, the determination of whether due process was accorded is decided by reference to the Constitution.[39] Due process requires that "a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case,'"[40] but the state does not have to provide the same remedies available under section 1983 in order to satisfy due process.[41]

In construing the Due Process Clause, the United States Supreme Court has held that negligent acts by state actors do not effect a "deprivation" for the purposes of the Due Process Clause,[42] and the random and unauthorized conduct of a government actor, even if intentional, does not implicate the Due Process Clause if the state provides a meaningful post-deprivation remedy, such as, for example, a tort remedy in its own courts.[43] However, where the state can feasibly provide a pre-deprivation hearing, it must do so regardless of the post-deprivation remedies available,[44] and in the absence of a special relationship created or assumed by the state, a state's failure to protect an individual from violence or injury caused by private actors cannot state a violation of the Due Process Clause.[45]

In addition to protection against deprivations of procedural due process, the Due Process Clause has two substantive components--the substantive due process simpliciter, and incorporated substantive due process. In order to state a claim for a violation of the substantive due process simpliciter, the plaintiff must demonstrate that the defendant engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional sense."[46] This form of due process has very limited application,[47] but, in contrast to certain procedural due process claims,[48] the existence of adequate post-deprivation remedies does not bar a substantive due process claim.[49] With respect to incorporated substantive due process, the plaintiff may state a claim by proving a violation of one of the Bill of Rights. The Supreme Court has held that one of the substantive elements of the Due Process Clause protects those rights that are fundamental--rights that are implicit in the concept of ordered liberty, and has, over time, held that virtually all of the Bill of Rights protect such fundamental rights and has likewise held that they apply to the states through the "liberty" interest of the Due Process Clause.[50] However, the Court has held that when a specific provision within the Bill of Rights already provides protection, the more generalized notion of due process should not be used to define constitutional rights.[51]

In addition to providing a remedy for deprivations of constitutional rights, section 1983 also makes actionable violations of federal "Laws."[52] A violation of a federal statute is cognizable only when the violation trammels a right secured by federal law.[53] However, a statute is said to create a federal right only when "the provision in question is intended to benefit the putative plaintiff,"[54] unless it reflects merely a congressional preference for a certain kind of conduct rather than a binding obligation on the government unit,[55] or unless the putative plaintiff's interest is too vague and amorphous such that it is beyond the competence of the judiciary to enforce.[56]

(v) " . . . shall be liable . . . in an action at law, Suit in equity, or other proper proceeding for redress . . . "

There is no requirement that the plaintiff sue in federal court because state courts have concurrent jurisdiction,[57] ]. *Howlett v. Rose, 496 U.S. 356 (1990). Of course, a defendant in state court may remove to federal court. 28 U.S.C. § 1441.* and the usual rule is exhaustion of administrative and judicial state remedies is not a prerequisite to a section 1983 action.[58] *Monroe v. Pape, 365 U.S. 167, 183 (1961)(exhaustion of judicial remedies is not a prerequisite); Patsy v. Florida Board of Regents, 457 U.S. 496, 501 (1982)(exhaustion of administrative remedies is not a prerequisite)*. Also, the existence of concurrent state remedies is not a bar to a section 1983 action.[59] *Zinermon v. Burch, 494 U.S. 113, 124 (1990)*. With respect to the extent of damages available, the Supreme Court has noted that the basic purpose of a section 1983 damages award is to compensate the victims of official misconduct, and therefore held that there is no limit on actual damages if they can be proven.[60] But where they are not proved, only nominal damages of $1.00 may be awarded.[61] Punitive damages may also be awarded, but not against a municipality.[62] Injunctive relief is also permitted.[63] 42 U.S.C. § 1983.

III. DEFENSES AND IMMUNITIES

States and state agencies are entitled to Eleventh Amendment immunity in federal court,[64] but local governments have no immunity from damages flowing from their constitutional violations, and may not assert the good faith of its agents as a defense to liability.[65] Further, state law sovereign immunity and state law limitations on damages do not protect local governments from liability under section 1983,[66] and state laws requiring pre-suit notification prior to initiating an action against the state or its subdivisions similarly do not apply.[67] Therefore, local governments are left in the unique and unhappy situation of being subject to suit without the benefit of any form of immunity.

In contrast to the distinct lack of immunity available to local governments, individual capacity defendants are protected by qualified immunity.[68] Qualified immunity is a powerful tool that shields individual officials who are performing discretionary activities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."[69] ]. *Harlow, 457 U.S. at 817; Lassiter, 28 F.3d at 1149*. A government official is entitled to qualified immunity unless his "act is so obviously wrong, in the light of preexisting law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing."[70] ]. *Lassiter, 28 F.3d at 1149; Ensley v. Soper, 142 F.3d 1402, 1406 (11th Cir. 1998)*(the plaintiff must point to case law which predates the official's alleged improper conduct, involves materially similar facts, and truly compels the conclusion that the plaintiff had a right under federal law The qualified immunity inquiry is purely objective--the subjective intentions of the actor is irrelevant.[71] . A court should scrutinize a plaintiff's claim to determine if the

plaintiff states a constitutional claim at all, prior to analyzing whether the defendant is entitled to qualified immunity.[73]

[2]. Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305 (1986).

[3]. 365 U.S. 167 (1961).

[4]. See section II(ii), infra, for a discussion of the "under color of state law" requirement.

[5]. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

[6]. Id.

[7]. Ex Parte Young, 209 U.S. 123 (1908).

[8]. Hafer v. Melo, 502 U.S. 25, 31 (1991); Kentucky v. Graham, 473 U.S. 159, 165 (1985).

[9]. Monell v. Dept. of Social Services of New York, 436 U.S. 658, 701 (1978).

[10]. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[11]. Id.

[12]. Hafer v. Melo, 502 U.S. 25 (1991).

[13]. City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985).

[14]. Government officials may be sued in their individual capacity. Such a suit does not represent a suit against the government entity for which he is associated. Kentucky v. Graham, 473 U.S. 159, 165 (1985). The failure to identify in which capacity a defendant is being sued is a critical pleading defect. Colvin v. McDougall, 62 F.3d 1316, 1318 (11th Cir. 1995).

[15]. Dean v. Barber, 951 F.2d 210 (11th Cir. 1992); Fed.R.Civ.P. 17(b). For example, Florida law provides that divisions of local governments, such as police departments, do not have the capacity to be sued. Florida City Police Department v. Corcoran, 661 So. 2d 409 (Fla. 3d DCA 1995).

[16]. Board of Regents v. Tomanio, 446 U.S. 478 (1980).

[17]. Section 1983's requirement that a person act "under color of any statute, ordinance, regulation, custom or usage of any State or Territory or District of Columbia" is commonly abbreviated as "under color of state law."

[18]. West v. Atkins, 487 U.S. 42, 49 (1988)(quoting United States v. Classic, 313 U.S. 299, 326 (1941)); Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982); Parratt v. Taylor, 451 U.S. 144, 152 (1970). However, in the only case in which the Supreme Court held that a government employee did not act under color of sate law, the Court held that a public defender does not act under color of state law while performing a lawyer's traditional function of representing criminal defendants. Polk County v. Dodson, 454 U.S. 312, 325 (1981).

[19]. Monroe v. Pape, 365 U.S. 167, 172 (1961).

[20]. Wyatt v. Cole, 504 U.S. 158, 162 (1992); Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982).

[21]. West v. Atkins, 487 U.S. 42 (1988); Ort v. Pinchback, 786 F.2d 1105 (11th Cir. 1986).

[22]. Lugar v. Edmondson Oil Co., 457 U.S. 922, 929 (1982).

[23]. Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part, Daniels v. Williams, 474 U.S. 327 (1986).

[24]. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-87 (1977).

[25]. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690-691, (1978). This "custom or policy" requirement has also been applied to private corporations who contract with the state to provide medical care to prisoners. Howell v. Evans, 922 F.2d 712, 723-24 (11th Cir.), order vacating appeal, 931 F.2d 711, 712 (11th Cir. 1991), partially reinstated and appealed sub nom, Howell v. Burden, 12 F.3d 190 (11th Cir. 1994).

[26]. Monell, 436 U.S. at 694.

[27]. Monell, at 691-695; Polk County v. Dodson, 454 U.S. 312, 325 (1981); Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985). Isolated unconstitutional incidents, without more, cannot bind a municipality. Oklahoma City v. Tuttle, 471 U.S. 808 (1985).

[28]. City of Canton v. Harris, 489 U.S. 378 (1989); Gold v. City of Miami, 1998 WL 54803 (11th Cir. 1998); Sewell v. Town of Lake Hamilton, 117 F.3d 488 (11th. Cir. 1997). However, where the employee's proper course of action "is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." Sewell, 117 F.3d at 490.

[29]. Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); Bryan County v. Brown, 520 U.S. 397 (1997). Who is a "final policymaker" is decided by reference to state law. Pembaur, at 483; McMillan v. Monroe County, 520 U.S. 781 (1997).

[30]. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). However, merely going along with the discretionary decisions made by subordinates is not a delegation to them of the authority to make policy. Id.

[31]. Greason v. Kemp, 891 F.2d 829, 836 (11th Cir. 1990); Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Zatler v. Wainewright, 802 F.2d 397, 401 (11th Cir. 1986).

[32]. Leatherman v. Tarrant County, 507 U.S. 163 (1993). There is, however, a heightened pleading standard for individual capacity claims. See note 83 infra, and accompanying text.

[33]. Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979); Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). Section 1983 does not provide for the vindication of rights secured by state law. Id. at 145-146; Almand v. DeKalb County, 103 F.3d 1510, 1513 (11th Cir. 1997).

[34]. U.S.CONST. amend. XIV, §1. The Fourteenth Amendment Due Process clause is a limitation on state power, while the Fifth Amendment Due Process clause limits federal power. Halinger v. Davis, 146 U.S. 314, 319 (1892).

[35]. Paul v. Davis, 424 U.S. 693, 701 (1976).

[36]. Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985); Baker v. McCollan, 443 U.S. 137, 145 (1979).

[37]. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); See also, Bishop v. Wood, 426 U.S. 341, 344 (1976).

[38]. Board of Regents, 408 U.S. at 576.

[39]. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).

[40]. Loudermill, 470 U.S. at 542.

[41]. Parratt v. Taylor, 451 U.S. 527, 543-544 (1981).

[42]. Daniels v. Williams, 474 U.S. 327 (1986).

[43]. Hudson v. Palmer, 468 U.S. 517, 533 (1984)("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the due process clause of the 14th amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy."). The Court later held that negligence does not constitute a "deprivation." Daniels v. Williams, 474 U.S. 327 (1986). See also, Zinermon v. Burch, 494 U.S. 113, 132 (1990).

[44]. Zinermon, 494 U.S. at 132.

[45]. DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989); Santamorena v. Georgia Military College, 147 F.3d 1337, 1339-1340 (11th Cir. 1998). As with all actions predicated upon a violation of the United States Constitution, in order to state a claim for a deprivation of due process, "state action" must be present. The eleventh circuit has recognized three primary tests to determine whether the actions of a private entity constitute state action: (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. National Broad Co. v. Communications Workers of Am., 860 F.2d 1022, 1026 (11th Cir. 1988).

[46]. Collins v. City of Harker Heights, Texas, 503 U.S. 115, 128 (1992); Rymer v. Douglas County, 764 F.2d 796, 801 (11th Cir. 1985).

[47]. Collins, 503 U.S. at 125("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."). See also, County of Sacramento v. Lewis, 523 U.S. 833 (1998)(high speed police chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability for violation of substantive due process); Albright v. Oliver, 510 U.S. 266, 271-272 (plaintiff could not make out substantive due process claim for alleged prosecution without probable cause because Fourth Amendment is more appropriately considered); Graham v. Connor, 490 U.S. 386, 394 (1989)(claims of force arrest by police officer during arrest or detention cannot state a substantive due process claim--it is more appropriately analyzed under Fourth Amendment); McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994)(in non-legislative cases, only procedural due process claims are available to pretextually terminated employees).

[48]. See note 46, supra, and accompanying text.

[49]. McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994).

[50]. Palko v. Connecticut, 302 U.S. 319, 325 (1937). For example, the Supreme Court has held that the Fourth Amendment proscription against unreasonable searches and seizures, Mapp v. Ohio, 367 U.S. 643 (1961), and the Sixth Amendment right to a speedy public trial, Klopfer v. North Carolina, 386 U.S. 213 (1967), apply to the states.

[51]. Albright v. Oliver, 510 U.S. 266, 273 (1994); Graham v. Connor, 490 U.S. 386, 395 (1989).
[52]. Maine v. Thiboutot, 448 U.S. 1 (1980).
[53]. Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 101, 106 (1989) ("Section 1983 speaks in terms of 'rights, privileges, or immunities,' not violations of federal law.").
[54]. Id.
[55]. Pennhurst State School and Hospital v Halderman, 451 U.S. 1, 19 (1981).
[56]. Golden State, 493 U.S. at 106 (quoting Wright v. Roanoke Redevelopment & Hous. Auth., 479 U.S. 418, 431-32 (1987)). See also, Maynard v. Williams, 72 F.3d 848, 851 (11th Cir. 1996).
[57]. Howlett v. Rose, 496 U.S. 356 (1990). Of course, a defendant in state court may remove to federal court. 28 U.S.C. § 1441.
[58]. Monroe v. Pape, 365 U.S. 167, 183 (1961)(exhaustion of judicial remedies is not a prerequisite); Patsy v. Florida Board of Regents, 457 U.S. 496, 501 (1982)(exhaustion of administrative remedies is not a prerequisite). But see, Younger v. Harris, 401 U.S. 37 (1971)(a federal plaintiff is barred from seeking declaratory or injunctive relief relating to ongoing state criminal judicial proceedings); Heck v. Humphrey, 512 U.S. 477 (1994)(plaintiff must prove that a conviction or sentence has been reversed prior to recovering damages for unconstitutional conviction or imprisonment); 42 U.S.C. § 1997e (a prisoner's civil rights lawsuit may be delayed up to 180 days to require the prisoner to exhaust administrative remedies).
[59]. Zinermon v. Burch, 494 U.S. 113, 124 (1990).
[60]. Carey v. Piphus, 435 U.S. 247 (1978).
[61]. Farrar v. Hobby, 506 U.S. 103, 112 (1992); Carey v. Piphus, 435 U.S. 247, 266-267 (1978).
[62]. Smith v. Wade, 461 U.S. 30 (1983); City of Newport v. Fact Concerts, 453 U.S. 247 (1981). A municipality may, however, be jointly and severally liable. Finch v. City of Vernon, 877 F.2d 1497 (11th Cir. 1989).
[63]. 42 U.S.C. § 1983.
[64]. Edelman v. Jordan, 415 U.S. 651 (1974). But as discussed above, because states are not "persons" under the statute, they cannot be sued in either state or federal court. See note 6, supra, and accompanying text.
[65]. Owen v. City of Independence, MO, 445 U.S. 621 (1980); Monell v. Dept. of Social Services of New York, 436 U.S. 658, 699-700 (1978).
[66]. Howlett v. Rose, 496 U.S. 356 (1990); Hamm v. Powell, 874 F.2d 766, 770 (11th Cir. 1989).
[67]. Felder v. Casey, 487 U.S. 131 (1988).
[68]. Harlow v. Fitzgerald, 457 U.S. 800 (1982). See also, Anderson v. Creighton, 483 U.S. 635 (1987); Lassiter v. Alabama A & M University Board of Trustees, 28 F.3d 1146 (11th Cir. 1994)(en banc).
[69]. Harlow, 457 U.S. at 817; Lassiter, 28 F.3d at 1149.
[70]. Lassiter, 28 F.3d at 1149; Ensley v. Soper, 142 F.3d 1402, 1406 (11th Cir. 1998)(the plaintiff must point to case law which predates the official's alleged improper conduct, involves materially similar facts, and truly compels the conclusion that the plaintiff had a right under federal law).
[71]. Crawford-El v. Britton, 523 U.S. 574 (1998); Anderson v. Creighton, 483 U.S. 635, 641 (1987); Harlow v Fitzgerald, 457 U.S. 800 (1982).
[72]. "One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." Siegert v. Gilley, 500 U.S. 226, 232 (1991). See also, Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991).
[73]. Siegert v. Gilley, 500 U.S. 226 (1991); GJR Investments Inc. v. Escambia County, 132 F.3d 1359, 1367 (11th Cir. 1998). Courts should not assume that the plaintiff states a constitutional claim simply to get to the qualified immunity issue. Siegert, 500 U.S. at 232.
[74]. Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826-27 n.4 (11th Cir. 1997)(en banc). "Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." Id. at 827.
[75]. Harlow, 457 U.S. at 815.
[76]. Behrens v. Pelletier, 516 U.S. 299, 313 (1996); Hunter v. Bryant, 502 U.S. 224, 228 (1991); Stone v. Peacock, 968 F.2d 1163, 1166 (11th Cir. 1992)(if there are disputed factual issues regarding qualified immunity that a jury should resolve, special interrogatories would be appropriate).
[77]. Hunter v. Bryant, 502 U.S. 224, 228 (1991). A defendant official may assert the qualified immunity defense in 12(b)(6) motion for failure to state a claim, as an affirmative defense in a 12(c) request for

judgment on the pleadings, and on a Rule 56(e) summary judgment motion. Ansley v. Heinrich, 925 F.2d 1339, 1347 (11th Cir. 1991).

[78]. A defendant in state court does not necessarily have the right to an interlocutory appeal. Johnson v. Fankell, 520 U.S. 911 (1997). But see, Fla.R.App.P. 9.130(a)(3)(C)(viii).

[79]. Mitchell v. Forsyth, 472 U.S. 511, 525-26 (1985). However, a defendant may not appeal the denial of a summary judgment motion on the issue of qualified immunity if the denial was based solely upon the existence of disputed factual issues, as opposed to a finding that the law was not clearly established, or that the defendant did not act objectively reasonably. Johnson v. Jones, 515 U.S. 304 (1995).

[80]. Johnson v. Fankell, 520 U.S. 911 (1997)("[I]f [qualified immunity] is found applicable at any stage of the proceedings, it determines the outcome of the litigation by shielding the official from damages liability); Behrens v. Pelletier, 516 U.S. 299, 305-11 (1996). The other claims that remain for trial may consist of a claim against the official in his official capacity. Id.

[81]. Crawford-El v. Britton, 523 U.S. 574, 598 (1998)("If the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery"); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery.").

[82]. Summit Medical Associates, P.C. v. James, 1998 WL 125776 (M.D.Ala. 1998)(citing Goshtasby v. Board of Trustees of Univ. of Ill., 123 F.3d 427 (7th Cir. 1997))(relating to appeal of Eleventh Amendment immunity).

[83]. GJR Investments, Inc. v. Escambia County, 132 F.3d 1359, 1367 (11th Cir. 1998).

[84]. See, Richardson v. McKnight, 521 U.S. 399 (1997)(private prison guards are not entitled to qualified immunity); Wyatt v. Cole, 504 U.S. 158 (1992)(private individuals who invoked state replevin, garnishment, or attachment statutes were not entitled to qualified immunity). However, the Supreme Court did not "foreclose the possibility that private defendants . . . could be entitled to an affirmative defense based upon good faith and/or probable cause or that § 1983 suits against private, rather than governmental, parties could require plaintiffs to carry additional burdens." Wyatt, 504 U.S. at 169.

[85]. See, McDuffie v. Hooper, 982 F.Supp. 817 (M.D. Ala. 1997)(private corporate health care providers who contract with government agencies are not entitled to qualified immunity); Hartman v. Correctional Medical Services, Inc., 960 F.Supp 1577, 1582 (M.D. Fla. 1996); Smith v. United States, 850 F.Supp 984, 986 (M.D. Fla. 1994). But see, Blumel v. Mylander, 954 F.Supp 1547, 1560 (M.D. Fla. 1997).

[86]. Supreme Court of Virginia v. Consumers Union, 446 U.S. 719 (1980); Tenney v. Brandhove, 341 U.S. 367 (1951). However, individual legislative immunity does not apply where the decision is an application of policy to a specific party. In that instance, the act is said to be administrative as opposed to legislative. Crymes v. DeKalb County, 923 F.2d 1482, 1486 (11th Cir. 1991).

[87]. 42 U.S.C. § 1983 was amended in 1996 to provide judicial officers with immunity from injunctive relief. This amendment partially overruled Pulliam v. Allen, 466 U.S. 522 (1984), which provided that judges were immune from suits for damages, but not injunctive relief.

[88]. Prosecutors are entitled to immunity for activities that are "intimately associated with the judicial phase of the criminal process," but a prosecutor engaged in investigative or administrative activities is only entitled to a good faith defense. Imbler v. Pachtman, 424 U.S. 409, 430 (1976). See also, Kalina v. Fletcher, 522 U.S. 118 (1997).

[89]. Board of Regents v. Tomanio, 446 U.S. 478, 483 (1980).

[90]. Wilson v. Garcia, 471 U.S. 261 (1985). But accrual of the statute of limitations is governed by federal law, while tolling of the statute of limitations is governed by state law. Mullinax v. McElhenney, 817 F.2d 711, 716 n.2 (11th Cir. 1987). See also, Hardin v. Straub, 490 U.S. 536 (1989); Owens v. Okure, 488 U.S. 235 (1989).

[91]. 42 U.S.C. § 1988.

[92]. One who recovers nominal damages is not a prevailing party. Farrar v. Hobby, 506 U.S. 103, 114 (1992). The Court reasoned that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. Id. at 114 (citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). Also, see Marek v. Chesny, 473 U.S. 1 (1985), for a discussion of the interplay between 42 U.S.C. § 1988 and the offer of judgment provision contained in Fed.R.Civ.P 68.

[93]. Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421 (1978).

In the Matter of

N·Y State DOH

v.

Neelam Taneja Uppal

# EXHIBITS

RECEIVED NYS DOH
MAY 0 9 2016
DLA - BPMC

# NEANDROSS PARMELEE & ASSOCIATES, LLC
## ATTORNEYS AT LAW
1370 BROADWAY – SUITE 506
NEW YORK, NY 10018
TELEPHONE (212)359-3398
FAX: (646)380-1220

NEW JERSEY OFFICE
1 SCENIC DRIVE – PH9
HIGHLANDS,NJ 07732
TELEPHONE: (732) 778-4618

JEFFREY L. NEANDROSS, ESQ.
DIRECT NO: (723)216-5056
EMAIL: JLN@NPLLCLAW.COM



Timothy J. Mahar, Esq.
Michael A. Hiser, Esq.
Associate & Deputy Counsels
NYS Department of Health
Bureau of Professional Medical Conduct
Corning Tower Building - Room 2512                    May 6, 2016
Empire State Plaza
Albany, NY 12237-0032         VIA FAX: (518)473-2430 & MAIL

RE: In the Matter of Neelam Uppal, M.D.
CO-15-01-0460A

Dear Messrs. Mahar & Hiser:

We refer to the captioned matter wherein a hearing is currently scheduled for May 19, 2016. Unfortunately, due to schedule conflicts the undersigned will not be able to appear at that time but Dr. Uppal will attend.

We wish to call your attention to a number of pertinent facts for your consideration before proceeding with this matter.

1. At all times herein, Dr. Uppal acted in good faith and no intention to ever misrepresent any fact in answering "No" on January 5, 2016 application for renewal of her registration with the NYC Education Department. The Florida finding in the proceedings by Board of Medicine of January 8, 2015 was under appeal on January 5, 2016 and a Final Order has still not been issued. Under Florida law the timely filing of an appeal automatically operates to stay the proceedings (Florida Rules of Appellate Procedure, Rule 9.310 (b)(2)). NYS Education Law Section 6530 9(c) requires that the a finding has to be "final" with "no appeal is pending" to constitute professional misconduct.

2. Dr. Uppal has fully cooperated with the your Department and has repeatedly informed your investigators of her position on the matter by her faxes of

   Select Language ▼   Google Translate Disclaimer   

Office of the Professions

# New York's Professional Misconduct Enforcement System

## Complaint Hot Line:

### 1-800-442-8106 or conduct@nysed.gov

To ensure public protection in New York State, the New York State Education Department's Office of the Professions (OP) investigates and prosecutes professional misconduct in all professions except medicine (see more information about this exception). Professional misconduct is the failure of a licensed professional to meet expected standards of practice.

The Board of Regents, which licenses individuals in more than 50 professions defined in Education Law, is responsible for the final disposition of all disciplinary matters. You may search our site by name or by month of action for summaries of final disciplinary actions.

Professional misconduct is defined in Education Law and in the Rules of the Board of Regents. Professional misconduct includes the following:

- Engaging in acts of gross incompetence or gross negligence on a single occasion, or negligence or incompetence on more than one occasion
- Permitting or aiding an unlicensed person to perform activities requiring a license
- Refusing a client or patient service because of race, creed, color, or national origin
- Practicing beyond the scope of the profession
- Releasing confidential information without authorization
- Being convicted of a crime
- Failing to return or provide copies of records on request
- Being sexually or physically abusive
- Abandoning or neglecting a patient in need of immediate care
- Performing unnecessary work or unauthorized services
- Practicing under the influence of alcohol or other drugs

A range of penalties that includes censure and reprimand, fines (up to $10,000 for each violation), suspensions and/or probationary terms may be imposed on licensees who have committed misconduct. The Board of Regents takes final action on the most serious cases of misconduct. In severe cases of misconduct, the Regents may revoke the professional's license. Information on uncontested determinations in which a licensee has been assessed a fine for committing an infraction of a minor and technical nature are available by phone: 518-474-3817, fax: 518-474-1449 or e-mail: op4info@nysed.gov, or by writing to the Office of the Professions.

OP's Professional Assistance Program allows licensees who abuse alcohol or other drugs to surrender their licenses voluntarily and confidentially while progressing through an acceptable course of treatment; it is available to licensees who have not harmed clients. Successful completion of the program may act as an alternative to disciplinary action.

OP also investigates allegations of illegal (unlicensed) practice in all 50 licensed professions, including medicine. Practicing a profession without a license and current registration is a felony in New York State.



11. Respondent's progress notes for A.M. from October 10 through October 16 were in a slightly different SOAP format. A.M.'s October 10 Progress Note reflects the following:

S:  Complaint:  Vanco reaction

O:  Examination:  BP ____ P ____ T ____ R ____
HT____ WT____ PO2____ Glucose _____

General Appearance; Awake alert,orientedx3
Head:  Normocephalic atraurmatic
EENT:  PERLA, EOMI,Sclera-non-icteric,
       conjunctiva-pink
Neck:  Supple, no JVD. No Lymph nodes
Heart:  S1 S2 normal, __ murmurs
Lungs:  clear
Abdomen:  Soft, no masses, no tenderness,
   BS+, no hepatomegaly, no splenomegaly
Left Lymph-inguinal: WNL
Right Lymph-inguinal: WNL
Extremities:. No clubbing, cyanosis, edema
Neurological:  Motor-5/5, sensory-5/5, Deep
       tendon reflexes 2+
       Cranial nerves Intact
Skin:  no rashes + circled Abscess
Muskuloskeletal:  WNL

CLINICAL ASSESSMENT:
   MRSA, Skin Abcess
   CVIO

PLAN:
   Zyvox

12. A.M.'s progress notes between October 11 and 31, 2008, reflect various subjective complaints regarding her skin conditions. The physical examinations for each day do not contain consistent information regarding A.M.'s blood pressure, her height, weight, respirations, PO2, and glucose. On two days the "skin" section reflected "no rashes," yet the clinical

13

11793

S:  Complaint:  MRSA,[17/] headecha [sic], she
like [sic] to talk W Dr. Pimple on but [sic]
3 rounds Zyvox, [illegible] c/o lethargic,
gain wt, fatigue, headaches Pale, feets [sic]
not Percocet —[illegible]."

O:  Exam:  Ht 5.6" Wt 172 Age 16 M/F
BMI_____ T___ BP 118/64 P 65 R____ PO2 99
Gluc ____

A:  General Appearance:  WNL[/18]
       HEENT:  WNL
       Neck:   WNL
       Chest:  WNL
       Breast: WNL
       Heart:  WNL
       Lungs:  WNL
       Abdomen: WNL
       Genitalia: WNL
       Skin:   WNL + multiple abcees [sic]
       Spine:  WNL
       Extremities:  WNL
   [All the "WNL" were typed capital letters.]
       DIAGNOSIS:
            Skin Abcess- Buttock, leg
            MRSA — Community Acquired

P:  PLAN:
       Vancomycin 1 gr daily
       [illegible]

    10.  A second Progress Note for A.M., also dated October 9,

contains the same information in the "S" and "O" portions, but at

the "A" portion, it has no notations other than the pre-printed

"WNL" at the "Skin" section, and it does not contain a

"Diagnosis."  Respondent admitted that there were times when she

would "complete records later on."

12

11792

NEELAM UPPAL, MD
P.O. Box 1001
Largo, FL-3377□

June 19 , 2015

To: Roxanne
OPMC
518-402-0145

RE: Neelam Uppal
OPMC- #5 -01 0460 A
EXPLANTION

I object to your allegation for the following reasons:
1. There was no allegation of 'Professional misconduct'.
2. The order has been appealed in the second District Court of Appeals, Florida. Hence,
A). Pursuant to the New York State Education law sec. 6530 para(h) an action where appeal is pending, is not a reportable.
B). Pursuant to Florida rule 9.310 (f) a Final order cannot be entered on an administrative action while the issues are pending review of the the Order by the Appellate Court.

3. This complaint has been made as an act of Malice, Slander and violation of my Civil Rights by ignoring the law.
4. EEOC charge was made.
5. I am sending the copy of Notice of Appeal.
6. The Board's policy requires disposition as 'on appeal'. The complainant entered the public report without reporting the appeal  and is not grounds for disciplinary action, but was done as an act of Retaliation, violation of my civil rights, false defamation,slander and harassment.
7. The action is was fraudulent to begin with as the Department of health got a retired physician to write an expert report in contradiction to literature in the MKSAP's and Board questions. He testified that MRSA happened in hospitals only and that I diagnosed  the patient with 'multiple skin abscesses' with Community acquired MRSA , as wrong diagnosis. He further, testified that I cured the patient with Once a day Vancomycin and Zyvox was wrong Prescribing.   However, the patient had been thankful to me for getting her better.
On the second patient he testified that you do not treat candidiasis with Azoles and Ambisome and that abnormal Immunoglobulin levels do not constitute immune- dysfunction .
On the third patient he said that as an Infectious Disease specialist I did not do the referrals and get reports from all the other specialists as the primary care even though I was not the primary care

There were 2 other board certified physicians who testified that I practiced medicine within the 'Standard of Care'. All the patients got better. 2 patients never filed the complaint and fought with the DOH not to use their case against me. One of them called me and said that they were interfering with her treatment.

But the ALJ, who was a former prosecutor at same DOH, was biased and abused her discretion, and said that she believed ( the false, misleading, deceptive) report of the DOH expert and not the reports of my experts based on the scientific literature and she ordered that I be suspended and disciplined. She mocked the efforts of the ABIM and the MKSAP. She said the credibility was of the physician who took his boards in 1964 and never re-certified since then.

Wherefore, I would request that this investigation be closed. If you need further information, please schedule an oral interview with me by calling 727-403-0022.

Yours sincerely,

NEELAM UPPAL, MD

NEELAM UPPAL, MD
P.O. Box 1002
Largo, FL-33779

October 19 , 2015

To: Charles F. Van Alstyne
OPMC
518-402-0820

RE: Neelam Uppal
OPMC-15-01-0460A

As per our conversation, I am sending you my CV and attaching the previous
letter submitted. I am in the process of updating my profile. But I would  not
say yes to the Qs. As :
1) There was no allegation of 'Professional misconduct'.
2. The order has been appealed in the second District Court of Appeals,
Florida. Hence,
A). Pursuant to the New York State Education law sec. 6530 para(h) an action
where appeal is pending, is not a reportable.
B). Pursuant to Florida rule 9.310 (f) a Final order cannot be entered on an
administrative action while the issues are pending review of the
 the Order by the Appellate Court.

3. EEOC charge was made.
Wherefore, I would request that this investigation be closed. If you need
further information, please schedule an oral interview with me by calling 646-
740-9141.

Yours sincerely,

NEELAM UPPAL, MD

# NEW YORK STATE DEPARTMENT OF HEALTH
# OFFICE OF PROFESSIONAL MEDICAL CONDUCT

## REPORT OF INTERVIEW

**SUBJECT:**            NEELAM UPPAL, MD

**FILE#:**              CO-15-01-0460A

**INTERVIEW OF:**      NEELAM UPPAL, MD

**DATE OF INTERVIEW:**   February 4, 2016

**INTERVIEW BY:**       CHARLES VAN ALSTYNE
                             Sr. Medical Conduct Inv.

On 2/4/16, Senior Medical Conduct Investigator CHARLES VAN ALSTYNE conducted a telephone interview with NEELAM UPPAL, M.D. at the Office of Professional Medical Conduct (OPMC), located at 150 Broadway, Albany, New York (NY). UPPAL was asked if she wanted to have an attorney present and she declined. UPPAL confirmed that no one else was present with her in the room and stated she was not recording the interview. UPPAL was advised the purpose of the interview was to discuss her negative response on the New York State Education Department (SED) Registration Renewal Application for the registration period of 4/1/16 - 3/31/18, submitted electronically on 1/5/16, to the moral character question that asked, "Since your last registration application, has any licensing or disciplinary authority revoked, annulled, cancelled, accepted surrender of, suspended, placed on probation, or refused to issue or renew a professional license or certificate held by you now or previously, or fined, censured, reprimanded or otherwise disciplined you?".

SMCI VAN ALSTYNE asked UPPAL why she answered no to the above-referenced moral character question on her SED application, knowing that her medical license was suspended and placed on probation by the Florida Board of Medicine. UPPAL referred SMCI VAN ALSTYNE to her written explanation dated 10/19/15, in which she wrote, "The order has been appealed in the second District Court of Appeals, Florida. Hence, pursuant to the New York State Education law sec. 6530 para (h), an action where appeal is pending, is not reportable." The interview ended at 9:30 a.m.



*The information contained herein is the property of the New York State Department of Health, is confidential, and is not to be released except as provided by law*



# New York State Education § 6530 Definitions of Professional Misconduct

§ 6530. Definitions of professional misconduct. Each of the following is professional misconduct, and any licensee found guilty of such misconduct under the procedures prescribed in section two hundred thirty of the public health law shall be subject to penalties as prescribed in section two hundred thirty-a of the public health law except that the charges may be dismissed in the interest of justice:

1. Obtaining the license fraudulently;

2. Practicing the profession fraudulently or beyond its authorized scope;

3. Practicing the profession with negligence on more than one occasion;

4. Practicing the profession with gross negligence on a particular occasion;

5. Practicing the profession with incompetence on more than one occasion;

6. Practicing the profession with gross incompetence;

7. Practicing the profession while impaired by alcohol, drugs, physical disability, or mental disability;

8. Being a habitual abuser of alcohol, or being dependent on or a habitual user of narcotics, barbiturates, amphetamines, hallucinogens, or other drugs having similar effects, except for a licensee who is maintained on an approved therapeutic regimen which does not impair the ability to practice, or having a psychiatric condition which impairs the licensee's ability to practice;

9. (a) Being convicted of committing an act constituting a crime under:

(i) New York state law or,

(ii) federal law or,

(iii) the law of another jurisdiction and which, if committed within this state, would have constituted a crime under New York state law;

(b) Having been found guilty of improper professional practice or professional misconduct by a duly authorized professional disciplinary agency of another state where the conduct upon which the finding was based would, if committed in New York state, constitute professional misconduct under the laws of New York state;

(c) Having been found guilty in an adjudicatory proceeding of violating a state or federal statute or regulation, pursuant to a final decision or determination, and when no appeal is pending, or after resolution of the proceeding by stipulation or agreement, and when the violation would constitute professional misconduct pursuant to this section;

(d) Having his or her license to practice medicine revoked, suspended or having other disciplinary action taken, or having his or her application for a license refused, revoked or suspended or having voluntarily or otherwise surrendered his or her license after a disciplinary action was instituted by a duly authorized professional disciplinary agency of another state, where the conduct resulting in the revocation, suspension or other disciplinary action involving the license or refusal, revocation or suspension of an application for a license or the surrender of the license would, if committed in New York state, constitute professional misconduct under the laws of New York state;

(e) Having been found by the commissioner of health to be in violation of article thirty-three of the public health law;

10. Refusing to provide professional service to a person because of



**NEELAM UPPAL, MD**
P.O. Box 1002
Largo, FL-33779

June 19 , 2015

To: Roxanne
OPMC
518-402-0145

RE: Neelam Uppal
OPMC-
EXPLANTION

I object to your allegation for the following reasons:
1. There was no allegation of 'Professional misconduct'.
2. The order has been appealed in the second District Court of Appeals,
Florida. Hence,
A). Pursuant to the New York State Education law sec. 6530 para(h) an action
where appeal is pending, is not a reportable.
B). Pursuant to Florida rule 9.310 (f) a Final order cannot be entered on an
administrative action while the issues are pending review of the
the Order by the Appellate Court.

3. This complaint has been made as an act of Malice, Slander and violation of
my Civil Rights by ignoring the law.
4. EEOC charge was made.
5. I am sending the copy of Notice of Appeal.
6. The Board's policy requires disposition as 'on appeal'. The complainant
entered the public report without reporting the appeal  and is not grounds for
disciplinary action, but was done as an act of Retaliation, violation of my civil
rights, false defamation,slander and harassment.
7. The action is was fraudulent to begin with as the Department of health got a
retired physician to write an expert report in contradiction to literature in the
MKSAP's and Board questions. He testified that MRSA happened in hospitals
only and that I diagnosed  the patient with 'multiple skin abscesses' with
Community acquired MRSA , as wrong diagnosis. He further, testified that I
cured the patient with Once a day Vancomycin and Zyvox was wrong
Prescribing.   However, the patient had been thankful to me for getting her
better.
On the second patient he testified that you do not treat candidiasis with Azoles
and Ambisome and that abnormal Immunoglobulin levels do not constitute
immune- dysfunction .
On the third patient he said that as an Infectious Disease specialist I did not
do the referrals and get reports from all the other specialists as the primary
care even though I was not the primary care

There were 2 other board certified physicians who testified that I practiced medicine within the 'Standard of Care'. All the patients got better. 2 patients never filed the complaint and fought with the DOH not to use their case against me. One of them called me and said that they were interfering with her treatment.

But the ALJ, who was a former prosecutor at same DOH, was biased and abused her discretion, and said that she believed ( the false, misleading, deceptive) report of the DOH expert and not the reports of my experts based on the scientific literature and she ordered that I be suspended and disciplined. She mocked the efforts of the ABIM and the MKSAP. She said the credibility was of the physician who took his boards in 1964 and never re-certified since then.

Wherefore, I would request that this investigation be closed. If you need further information, please schedule an oral interview with me by calling 727-403-0022.

Yours sincerely,

NEELAM UPPAL, MD

More Exhibits

( A )

( Medical Certificate )



**Memorial Sloan-Kettering
Cancer Center**

**Mary L. Gemignani, MD, MPH, FACS**

Associate Attending, Breast Service, Department of Surgery
Director, Breast Surgical Fellowship Program
Associate Professor, Weill Cornell Medical College

October 30, 2013

Name: **UPPAL, Neelam T.**
MRN: **35403923**

To Whom It May Concern:

Please be advised that the above named patient is currently under my care at Memorial Sloan Kettering Cancer Center. Ms. Uppal will undergo Pre-Surgical Testing November 8th, 2013, a seed localization November 12th, 2013, surgery November 14th, 2013, and her post-operative appointment December 3rd, 2013. Her surgery is medically necessary intervene in her cancer. I would appreciate any consideration you can extend to her.

If you have any questions please do not hesitate to call my office at 646-888-5475.

Sincerely,

*Mary J. Gemignani, MD*

Mary Gemignani, MD, MPH, FACS
Associate Attending, Breast Service
Department of Surgery, MSKCC

Evelyn H. Lauder Breast Center
300 East 66th Street | New York, NY 10065
Phone: 646-888-5475 | Fax: 646-888-4921
www.mskcc.org

NCI-designated Comprehensive Cancer Center

"             "

B

Mr. Madener admits he Never
looked at Medical Records before filing accusations
and writing his Breifs.
Records show they all had "Assessment and
Plan"

Mahar, Timothy J (HEALTH)
RE: Neelam Uppal, MD
Oct 28, 2016, 3:07:09 PM
Neelam
Horan, James F (HEALTH)

I don't have either the police report or the patient CB's medical record. Neither was admitted into evidence, is my recollection. The references in Petitioner's Brief to the police and patient CB were limited only to the Florida Hearing Tribunal's statements on these issues as found in Exhibit 4. However, I do not have the exhibits which I assume were exhibits in the Florida hearing.

Tim Mahar

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT
ATTORNEY CLIENT PRIVILEGE

Timothy J. Mahar
Associate Counsel
Bureau of Professional Medical Conduct
Division of Legal Affairs
New York State Department of Health
Room 2509, Corning Tower Building
Empire State Plaza
Albany, New York 12237
518.473.4282
timothy.mahar@health.ny.gov

**From:** Neelam [                              ]
**Sent:** Friday, October 28, 2016 10:06 AM
**To:** Mahar, Timothy J (HEALTH) <                    >
**Cc:** Horan, James F (HEALTH) <                    >
**Subject:** Re: Neelam Uppal, MD


Those are attachments that Mr. Mahar has written his initial Breif on, so he already has them
-Dr. Uppal


Sent from my iPhone


Dear Judge Horan,

**Neelam Uppal, MD**
**5840 Park Blvd.**
**Pinellas Park, Fl-33781**
**(727)-547-5232**

## HISTORY & PHYSICAL

**PATIENT'S NAME: CASSANDRA BURKE**
**AGE: 42 YEARS OLD     D.O.B.: May, 19, 1968**
**RACE: BLACK**
**SEX: FEMALE**

**HISTORY:**
*Mrs. Burke came to the office after several years. Patient was then discharged from the office for misbehavior. Patient was then in jail. Patient comes back begging to help her as she is been having allergies to a lot of foods. No other doctor has been able to help her except me. States she is a friend of the staff and wants me to help her. She is having recurrence of her thrush on the tongue. Complains of vaginal itching. Has been on Diflucan with no significant relief.*

**PAST HISTORY:** *Patient has history of immune dysfunction, possible CVID, chronic and recurrent yeast infections since 2005.*

**MEDICATIONS:** *Benadryl, Mucinex*

**ALLERGIES:** *Sulfa, Xanax, food allegies*

**REVIEW OF SYSTEMS :**
**General:** *complained of weight loss*
**HEENT : Thrush,** *As per HPI*
**Cardiovascular:** *No Complaints*
**Pulmonary:** *No Complaints*

**Gastrointestinal: Diarrhea, bloating,** *See Chart*

**Muscuoskeletal:** *complains of joint pains, muscle aches*

**Psychiatric:** *h/o psych disorder. Pt. Was discharged from practice several years ago for misbehavior in office. Records were then sent to jail.*

**Dermatological:** *some rash and break- down or skin*
**Neurological:** *complains of memory loss*

**SOCIAL HISTORY:** *Does not drink or smoke. Was in jail*

**FAMILY HISTORY:** *Non- contributory.*

**PHYSICAL EXAMINATION:**
**VITAL SIGNS:  BP:    /    Pulse:    Temp:    Resp: Wt.:**

**General Appearance:** *Apathetic, Cachetic*
**Head:** *Normocephalic, atraumatic*
**Eyes :** *PERLA, glassy, EOMI*
**Ears:** *EAC-WNL,  tympanic membrane-intact, no discharge*
**Nose: clear, no discharge**
**Throat:** *Hyperemic, no exudates*
**Neck:** *supple, stiff, no lymph nodes*
**Thyroid:** *no enlargement*
**Chest:** *no tenderness, no masses*
**Lungs:** *Clear*
**Heart:** *S1S2 normal, No murmurs*
**Abdomen:** *Soft, no masses, no tenderness*
**Extremities:** *No clubbing cyanosis or edema*
**Neurological Exam:** *Grossly intact*
**Musculoskeletal:** *Some muscle tenderness and knee Joint swelling*

**REVIEW OF LABORATORY DATA: see chart**

*IgG High*

*Candida Ab. High*

**RESEARCH AND REVIEW OF LITERATURE: see Abstract.**

**ASSESSMENT:** *Patient complains of multiple food allergies with diarrhea and abdominal bloating. Patient has severe thrush which has not*

ben responsive to oral azoles suggesting resisitance of fungus. Also, the diarrhea could be due to GI tract candidasis. Patient was seen by GI specialist who did not do anything , as per the patient. Patient is in hyperimmune status
Which could be the basis of immune dysfunction along with food allergies.


**PLAN:**

Treatment of the infection.- systemic candidiasis, Skin rash
Assist in immune system boosting
Laboratory work up




Sincerely,




Neelam Uppal, M.D.



Reprinted



Letters of Character Witnesses

*LETTER OF RECOMMENDATION*

TO WHOM IT MAY CONCERN
Re: Dr. Neelam Uppal


I have known Dr. Neelam Uppal for ___9.5___ . YEARS

Dr. Uppal is an Honest, ethical  and doctor with integrity. I trust Dr. Neelam Uppal
and highly recommend her.


NAME                              PHONE NUMBER            EMAIL

_Mitch Perry_                     _727 461 4146_          _mitch.perry@verizon.net_

2/21/17

To: Whom it May Concern

I am sister of Dr. Neelam Taneja Uppal and writing to highlight some of my sister's values and accomplishments that I take great pride in.

At 9 years of age, Neelam knew that she wanted to be a doctor to serve the humanity. She was a topper out of 4 sections of students for most grades in school and the brightest kid in the family. She was able to secure admission into a very prestigious medical school, Christian Medical College, India and subsequently came to America. In her very first year she was able to contribute towards research in AIDS, and was recognized as the first Indian women to get awarded in the first place by American College of Physician Research for her work.

Dr. Neelam Uppal has an exceptional sense of responsibility in caring for her patients. Dr. Uppal is very ethical, has high moral values and is a person of great integrity. She is bright, scientific, technical, compassionate and puts her heart in her work. Her abilities allow her to work with diverse range of patients of all ages and I have personally heard her patients admiring her as a physician as they were not diagnosed by other doctors before they saw her. The comments of her patients treated are always positive and glowing.

I have two personal episodes where Dr. Uppal saved my life. Once, I had a vancomycin resistant enterococci and she treated me with a combination drug in a very timely manner that saved my life. Second time, I had facial swelling and she directed me to Ear Nose and Throat doctor as she pointed it could result in meningitis and blindness. The ENT physician confirmed that my sister was right and had emergency surgery the same evening. If it was not for her, I could have been disabled.

Her accomplishments have been honored by various awards which include being selected for 3 consecutive years as Physician Who Cares from the Florida Medical Association, America's Top Physician by national survey and Physician of the Year by NRCC. She has also published several research articles and has authored a book. Such medical contributions truly speak for her exceptional skills as a physician and are a treasure to the community she serves.

She has dedicated her life to the medical profession and this is her passion. I recommend her without reservation to be able to do what she is best at which is serving and curing the patients and touching the lives of many.

Sincerely Yours,

Rashmi Mangal, Ph.D.

*LETTER OF RECOMMENDATION*

TO WHOM IT MAY CONCERN
Re: Dr. Neelam Uppal

I have known Dr. Neelam Uppal for ___4___ .  YEARS

Dr. Uppal is an Honest, ethical  and doctor with integrity. I trust Dr. Neelam Uppal
and highly recommend her.

**NAME**                        **PHONE NUMBER**              **EMAIL**

Abu Saleem            917 595 9916            Sos505102ass@gmail.com

Gpnfoundation
Reference letter
Jul 2, 2015, 2:22:52 PM
nneelu123@aol.com

## I hope this is

P.O. Box 750741
Forest Hills, NY 11375
June 26, 2015

**To whom it may concern**

Dear Sir Madam,

I am a physician that has known Dr. Neelam Taneja-Uppal for over three decades. I have referred many patients and their families to Dr. Uppal for patient care services. Dr. Uppal has always demonstrated professionalism, and has helped families in the most caring way. Her commitment to her vocation is stellar. Dr. Uppal exhibits genuineness and a high standard of care. Dr. Uppal provides an unmatched level of care to her patients. It is my utmost pleasure to write this letter of reference for her.

Sincerely,

Sandhya Malhotra, M.D.

Past President 2012-2013 MSCQ



"D"

Showing Dr. uppal has had
no malpractice lawsuits

03/23/2015 7:28 PM

Page 1 of 1

CATLIN

# Claims Loss Run

## As of 03/23/2015

From: Catlin Specialty Insurance Company
Underwriting Department

Insured: Neelam T. Uppal
Attention: Loss Control Department

| Policy Number | Eff Date | Exp Date/ Cancel Date | Claim/Incident Num | Claimant Name | Loss Date | Report Date | Status | Description of Loss | Loss Paid | Expense Paid | Loss Reserves | Expense Reserves | Total Incurred |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PDM-198114-0611 | 06/12/10 | 06/12/11 | No Claims Reported for Neelam T. Uppal as of 03/23/15 | | | | | | | | | | |
| PDM-198114-0612 | 06/12/11 | 06/6/11 | No Claims Reported for Neelam T. Uppal as of 03/23/15 | | | | | | | | | | |
| **Total Number of Claims: 0** | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

Catlin Specialty Insurance Company
4250 N. Drinkwater Blvd.
Suite 300
Scottsdale, AZ 85251



PROFESSIONAL LIABILITY ASSOCIATION, LLC
CARE RISK RETENTION GROUP, INC

# Claims Report

Insured: Neelam T. Uppal, MD

Loss Run Date: 10/28/2014

Most recent Policy Number: PPL0900198

| Claimant | Claim Number | Date of Loss | Report Date | Indemnity Paid | Indemnity Reserve | Expenses Paid | Expenses Reserve | Status |
|---|---|---|---|---|---|---|---|---|
| Dept. Of Health | GC100-108-376a201025C371 | 5/18/10 | 5/12/14 | $ - | $ - | $ 28,013 | $ 9,988 | Open |
| | | | | $ - | $ - | $ 28,013 | $ 9,988 | |

*Loss run is only for policy period when the insured was/is covered by CARE.

Policy Coverage Dates:

Original Policy Inception Date: 1/4/2012
Expiration Date: 1/4/2015
Retro Date: 1/1/2009

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS

DEPARTMENT OF HEALTH,

Petitioner,

Case Nos. 13-000595PL
14-000514PL
14-000515PL

vs

NEELAM TANEJA UPPAL, M.D.,

Respondent.

_____/

### JOINT MOTION TO CONSOLIDATE

Respondent, Neelam Taneja Uppal, M.D ("Respondent") and the Petitioner, State of Florida Department of Health ("Petitioner"), jointly request that the above-styled cases be consolidated, and as grounds state:

1.  Petitioner has filed three (3) Administrative Complaints against Dr. Uppal in cases numbered 13-000595PL, 14-000514PL, and 14-000515PL. All three cases are set for separate administrative hearings on July 14, 15, and 16, 2014.

2.  Rule 28-106.108, Florida Administrative Code provides that, "[i]f there are separate matters which involve similar issues of law or fact, or identical parties, the matters may be consolidated if it appears that consolidation would promote the just, speedy, and inexpensive resolution of the proceedings, and would not unduly prejudice the rights of a party."

3   On February 3, 2014, Petitioner filed a motion seeking, in part, consolidation of the three cases and on February 14, 2014, this Honorable Administrative Law Judge entered an Order holding:

**CERTIFICATION:**

The aforesaid pleadings have been served to

_____

M.D,. Pro se

                                        Neelam Uppal,

                                        PO Box 1002,
                                        Largo, FL-33779
                                        727-403-0022

"E"

Transcript showing Dr. Uppal
describing "scientific" law.

16    was going to the gym, and the clinical diagnosis was

17    MRSA.  I gave her vancomycin.  The patient got

18    better.

19          The parents are thankful to me to this day

20    for saving their child's life, but I am being

21    punished because the Department of Health expert and

22    now Mr. Mahar says that we did not have a positive

23    result.  And if you know any medicine, you know, once

24    they have received the oral antibiotics, you may not

25    get a positive result.

Page 66

1          My interest is to make the patient better,
                                (scientific)
2    not follow results, not follow laws, but to save a

3    life.  And that's what I did.  And I'm being punished

4    for that, and I'm not given a proper hearing.  And I

5    am being made a victim of technicalities.

6          And the second patient, he said I gave

7    immunoglobulin.  And that's why I wanted to put into

8    evidence the reports of the experts who have

9    confirmed my --

10          MR. MAHAR:  Objection.

11          JUDGE MACKILLOP-SOLLER:  I note your

12    objection.

13          Dr. Uppal, the experts' testimony or their

14    opinions during the administrative process in Florida

15    wouldn't be relevant to the proceeding.

16          DR. UPPAL:  But he brought it up.

17          JUDGE MACKILLOP-SOLLER:  He's talking about

18    the Florida board's findings in Florida.

19          DR. UPPAL:  That's what I'm saying.  The

20    patient did have abnormal



PRESS FIRMLY TO SEAL

# PRIORITY
★ MAIL ★
## EXPRESS™

OUR FASTEST SERVICE IN THE U.S.

EMS

EP13F July 2013  OD: 12.5 x 9.5

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

VISIT US AT USPS.COM®

U.S. POSTAGE
PAID
PRINCETON JUNCTION, NJ
08550
MAR 29,17
AMOUNT
**$23.75**
R2303S1104539-26

# PRIORITY
★ MAIL ★
EXPRESS™

TY MAIL EXPRESS
AGE REQUIRED

UNITED STATES POSTAL SERVICE®



WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.

PAYMENT BY ACCOUNT (if applicable)

CUSTOMER USE ONLY

FROM: (PLEASE PRINT)    PHONE ( )

DELIVERY OPTIONS (Customer Use Only)
☐ SIGNATURE REQUIRED (Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.)
Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE ( )

ZIP + 4® (U.S. ADDRESSES ONLY)

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

LABEL 11-B, OCTOBER 2016    PSN 7690-02-000-9996

ORIGIN (POSTAL SERVICE USE ONLY)

| PO ZIP Code | Day | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|---|
| 08550 | ☐ 1-Day ☐ 2-Day | | $ |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time ☐ 10:30 AM ☐ 3:00 PM | | Return Receipt Fee |
| Time Accepted ☐ AM ☐ PM | 10:30 AM Delivery Fee | | Insurance Fee $ |
| | | | COD Fee $ |

DELIVERY (POSTAL SERVICE USE ONLY)

| Weight | Special Handling/Fragile | Sunday/Holiday Premium Fee | Military ☐ |
|---|---|---|---|
| lbs. oz. | ☐ Flat Rate | | Total Postage & Fees |
| Delivery Attempt (MM/DD/YY) Time ☐ AM ☐ PM | Acceptance Employee Initials | Employee Signature | |
| Delivery Attempt (MM/DD/YY) Time ☐ AM ☐ PM | Employee Signature | | $ |

3-ADDRES


UNITED STATES POSTAL SERVICE

