RECEIVED
SDNY DOCKET UNIT
2017 AUG 15 PM 3: 11

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF NEW YORK

Neelam T. Uppal,

Case No.: 1:16-CV-3038
Jury trial Requested

v.
**FL DOH,**
**NEW YORK STATE DEPARTMENT OF HEALTH**
**ET AL**
_______________________________/

**ANSWER AFFIDAVIT, MEMORANDUM OF LAW FOR ORDER TO SHOW CAUSE FOR INJUNCTIVE RELIEF**



AFFIDAVIT

NEELAM TANEJA UPPAL, being duly sworn, deposes and says:

I am the petitioner in this proceeding and make this affidavit in support of my application pursuant to Public Health Law § 230-c(5) staying so much of the determination of the Administrative Review Board for Professional Medical Conduct, which, upon modifying a determination of the hearing panel, revoked my license to practice medicine in New York, to re-instate the Petitioner's medical license. Violation of Civil Rights: Discrimination

In Dr. Uppal's civil rights case, she "asserts that she suffers from injuries as a result of her licensure deprivations that cannot be addressed by any amount of compensatory monetary award" and is requesting damages under Section 42 civil rights 1983 and 1985.

Violation of Civil Rights: 42 USC 1985- proficiency in English

Retaliation Against Dr. Uppal :

"The anti-retaliation regulation provides that "[n]o recipient ... shall intimidate, threaten, coerce, or discriminate against any individual for the purposes of interfering with any right or privilege secured by [the Act], or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing ..." 34 C.F.R. § 100.7(e)

Specifically discussing the retaliation claim,."

1. On January 31, 2017, the Administrative Review Board of New york State department of Health issued a decision that revoked the Plaintiff's License to practice medicine in New York to discriminate against her and retaliate against her and violate her civil rights

2. .Based upon the Florida Board of Medicine's determination, respondent State Board for Professional Medical Conduct sought reciprocal discipline. In addition, Petitioner was charged with falsely answering "no" to the question whether she had been subject to discipline elsewhere on her renewal application dated January 5, 2016, even though the determination was not final until May 11, 2016, when the Second District Court of Appeal affirmed the Florida determination (*Uppal v. Dep't of Health, Bd. of Med.*, 197 So.3d 51[Fla 2d DCA 2016]). A copy of the order10. The determination of the ARB is not supported by

substantial evidence and is otherwise arbitrary and capricious. In Florida, there was a lack of notice or opportunity to be heard constituting a deprivation of due process; (2) there was an infirmity of proof presented to the foreign jurisdiction; or (3) the conduct for which the physician was disciplined in the foreign jurisdiction does not constitute misconduct in this jurisdiction.

3.. The determination of the ARB is not supported by substantial evidence and is otherwise arbitrary and capricious. In Florida, there was a lack of notice or opportunity to be heard constituting a deprivation of due process; (2) there was an infirmity of proof presented to the foreign jurisdiction; or (3) the conduct for which the physician was disciplined in the foreign jurisdiction does not constitute misconduct in this jurisdiction.

4. In October 2012, Petitioner fell sick and she had to close her Florida practice. On July 7, 2014. all the complaints were consolidated into one complaint. On July 14 and 15, 2016, the trial was scheduled, but she was not allowed a chance to defend herself. This, violating her constitutional rights to due process.

5. Florida and New York Have Different Definitions of Malpractice. Florida defines medical malpractice as the failure to practice medicine in accordance with the level of care "recognized in general law related to health care licensure." In contradistinction, New York requires physicians to possess the degree of knowledge and skill possessed by the average member of the medical profession in the community in which he or she practices.

6. The record in the Florida proceedings shows that there was a dispute among the experts on the question, Dr. Issa Ephtimios , a board certified physician in internal medicine, infectious diseases and infection control and is an attending physician at Sacred Heart Hospital, West Florida Hospital, Baptist Hospital, and Select Specialty Hospital in Pensacola, Florida.
testified as an expert for Petitioner that the care was appropriate.

7. Under New York law where parties present evidence of a choice between or among medically acceptable alternatives or diagnoses this is an error of judgment and not malpractice.

8. Insofar as the medical records are concerned, the charges were originally dismissed. . New Administrative Complaints were made on Old Medical records, after the Practice was closed, on patients whose complaints were already dropped by the Previous Prosecutors. None of these patients had been seen

since the prior complaints. Inasmuch as the prior charges were dismissed, New York would apply res judicata and the charges could not be pressed in New York.

9. Finally, and in any event, the penalty imposed by the ARB is so incommensurate with the offense as to shock one's sense of fairness. There was no basis to overturn the decision of the hearing panel on penalty. The penalty fixed by the hearing panel is consistent with the precedents of this Court. The penalty fixed by the ARB is not.

10. In cases such as this, the penalty should be presumptively reciprocal and certainly not more harsh absent some aggravating circumstance. Although I answered "no" to the question on my license renewal asking whether I had been subject to discipline elsewhere, at that time the determination was before the Second District Court of Appeal of Florida. I believed that, until that Court acted, the determination was not final and therefore my answer was accurate. See exhibit A

11. In any event, when measured against this Court's precedents in *Matter of Addei v. State Bd. Prof'l Med. Conduct* (278 A.D.2d 551 [3d Dept. 2000]), *Matter of Sarfo v. De Buono* (235 A.D.2d 938 [3d Dept. 1997]), *Matter of Colvin v. Chassin* (214 A.D.2d 854, 855 [3d Dept. 1995]) and *Matter of Sarosi v. Sobol* (155 A.D.2d 125 [3d Dept. 1990]), in all of which this Court annulled a penalty of revocation, it is evident that the penalty imposed by the ARB is so incommensurate with the offense as to shock one's sense of fairness. There was no basis to overturn the decision of the hearing panel on penalty."

12. Exhaustion of Administrative Remedies

According to NYSDOH Claim to dismiss the claims on various grounds, including "failure to exhaust ". "With respect to exhaustion, the due process request mentioned in the claims, including the retaliation claim. Although the the administrative decision did not expressly rule on those claims, the decision does not include relevant factual findings that go beyond what was necessary to find a reason for denial of Petitioner's license. Further, because of the comprehensive remedies were violated in the due process clause, further exhaustion must be excused as futile."

WHEREFORE, Petitioner requests that this Court enter an Injunctive releif and annul the determination of the ARB and hearing committee together with re-instating petioner's medical License and

any such other and further relief as this court may seem just and proper.

Dated 3/30 . 2017

**NEELAM UPPAL, PRO, SE**
***1370 Broadway, # 504***
***New York, NY -10018***
***PH. - (646)-740-9141***
***E-mail-***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by

on 30 day of March, 2017 to: NYSDOH

TO: all Creditor via email or USPS mail

MEMORANDUM OF LAW

CIVIL RIGHTS LIABILITY UNDER 42 U.S.C. § 1983:
AN OVERVIEW OF SUPREME COURT AND ELEVENTH CIRCUIT PRECEDENT

INTRODUCTION AND HISTORY

42 U.S.C. § 1983, commonly referred to as "section 1983" provides:

Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (emphasis added).

Section 1983 was enacted on April 20, 1871 as part of the Civil Rights Act of 1871, and is also known as the "Ku Klux Klan Act" because one of its primary purposes was to provide a civil remedy against the abuses that were being committed in the southern states, especially by the Ku Klux Klan. While the existing law protected all citizens in theory, its protection in practice was unavailable to some because those persons charged with the enforcement of the laws were unable or unwilling to do so.[1] The Act was intended to provide a private remedy for such violations of federal law, and has subsequently been interpreted to create a species of tort liability.[2]

The number of cases that have been brought under section 1983 since 1961 when the Supreme Court decided Monroe v. Pape.[3] In Monroe, the Supreme Court held that a police officer was acting "under color of state law" even though his actions violated state law.[4] This was the first case in which the Supreme Court allowed liability to attach where a government official acted outside the scope of the authority granted to him by state law. Since Monroe v. Pape was decided, an extensive body of law has developed to govern section 1983 claims. This article is intended to provide an overview of that extensive body of law, and will include seminal precedent from the United States Supreme Court and the Eleventh Circuit Court of Appeals--a comprehensive study of all law related to section 1983 is beyond the scope of this article.

II. ELEMENTS OF A SECTION 1983 CLAIM

(i) "Every person . . ."

Only "persons" under the statute are subject to liability.[5] A state is not a person subject to suit under section 1983,[6] but a state officer can be sued in his official capacity for prospective or injunctive relief[7] despite the fact that an suit against a government official in his official capacity represents nothing more than a suit against the government entity itself![8] Despite this logical inconsistency, the current state of the law is that a state may not be sued for damages, but may be sued for declaratory or injunctive relief. Municipalities and local governments are persons subject to suit for damages and prospective relief,[9] but the United States Government is not.[10] Individual employees of federal,[11] state[12] and local[13] government may be sued in their individual capacities[14] for damages, declaratory or injunctive relief. While the determination of who is a "person" is a matter of federal statutory interpretation, the matter of who has the capacity to be sued is determined by the law of the forum state.[15] Likewise, the law of the forum is to be applied in actions under section 1983 where the law of section 1983 provides no guidance.[16]

(ii) ". . . who under color of [state law][17] . . ."

The traditional definition of acting under the color of state law requires that the defendant have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law,"[18] and such actions may result in liability even if the defendant abuses the position

given to him by the state.[19] A private actor may also act under color of state law under certain circumstances.[20] For example, it has been held that a physician who contracts with the state to provide medical care to inmates acts under the color of state law.[21] For all practical purposes, the "color of state law" requirement is identical to the "state action" prerequisite to constitutional liability.[22]
(iii) ". . . subjects or causes to be subjected . . ."
Section 1983 does not impose a state of mind requirement independent of the underlying basis for liability,[23] but there must be a causal connection between the defendant's actions and the harm that results.[24] In order to hold a local government liable under section 1983, the Supreme Court has interpreted this causation element to require that the harm be the result of action on the part of the government entity that implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or the result of the entity's custom.[25] Further, the entity's policy or custom must have been the "moving force" behind the alleged deprivation.[26] This "custom or policy" requirement is a dramatic departure from the rule of respondeat superior that prevails in many common law actions.[27]

A local government is said to have an unconstitutional policy when it fails to train its employees, and the failure to train amounts to deliberate indifference to an obvious need for such training, and the failure train will likely result in the employee making a wrong decision.[28] An unconstitutional policy may also exist if an isolated action of a government employee is dictated by a "final policymaker,"[29] or if the authorized policymaker approves a subordinate's decision and the basis for it.[30] However, a supervisor can only be liable in his individual capacity if he directly participates in causing the harm--relying upon respondeat superior is insufficient.[31] The Supreme Court has rejected the notion that a plaintiff must meet a heightened pleading standard to state a claim against a municipality for an unconstitutional custom or policy.[32]
(iv) ". . . [any person to] the deprivation of rights . . ."
Section 1983 is not itself a source of substantive rights, it merely provides a method for the vindication of rights elsewhere conferred in the United States Constitution and Laws.[33] Therefore, a plaintiff may prevail only if he can demonstrate that he was deprived of rights secured by the United States Constitution or federal statutes. It is beyond the scope of this article to discuss all of the rights available under the United States Constitution, nevertheless, this article will provide an overview of perhaps the most utilized of all constitutional provisions--the Fourteenth Amendment Due Process Clause [hereinafter "the Due Process Clause"].[34]

The Supreme Court has held that the Due Process Clause was not intended to supplant tort law, or to become "a font of tort law to be superimposed upon whatever systems may already be administered by the states."[35] Against this backdrop, to state a claim for a deprivation of Due Process, a plaintiff must show: (1) that he possessed a constitutionally protected property interest; and (2) that he was deprived of that interest without due process of law.[36] Due process property interests are created by "existing rules or understandings that stem from an independent source such as state law--rules or understanding that secure certain benefits and that support claims of entitlement to those benefits."[37] To have a property interest protected by the Due Process Clause, "a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[38] While the existence of a protected property interest is decided by reference to state law, the determination of whether due process was accorded is decided by reference to the Constitution.[39] Due process requires that "a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case,'"[40] but the state does not have to provide the same remedies available under section 1983 in order to satisfy due process.[41]
In construing the Due Process Clause, the United States Supreme Court has held that negligent acts by state actors do not effect a "deprivation" for the purposes of the Due Process Clause,[42] and the random and unauthorized conduct of a government actor, even if intentional, does not implicate the Due Process Clause if the state provides a meaningful post-deprivation remedy, such as, for example, a tort remedy in its own courts.[43] However, where the state can feasibly provide a pre-deprivation hearing, it must do so regardless of the post-deprivation remedies available,[44] and in the absence of a special relationship created or assumed by the state, a state's failure to protect an individual from violence or injury caused by private actors cannot state a violation of the Due Process Clause.[45]

In addition to protection against deprivations of procedural due process, the Due Process Clause has two substantive components--the substantive due process simpliciter, and incorporated substantive due process. In order to state a claim for a violation of the substantive due process simpliciter, the plaintiff must demonstrate that the defendant engaged in conduct that was "arbitrary, or conscience shocking, in a constitutional sense."[46] This form of due process has very limited application,[47] but, in contrast to certain procedural due process claims,[48] the existence of adequate post-deprivation remedies does not bar a substantive due process claim.[49] With respect to incorporated substantive due process, the plaintiff may state a claim by proving a violation of one of the Bill of Rights. The Supreme Court has held that one of the substantive elements of the Due Process Clause protects those rights that are fundamental--rights that are implicit in the concept of ordered liberty, and has, over time, held that virtually all of the Bill of Rights protect such fundamental rights and has likewise held that they apply to the states through the "liberty" interest of the Due Process Clause.[50] However, the Court has held that when a specific provision within the Bill of Rights already provides protection, the more generalized notion of due process should not be used to define constitutional rights.[51]

In addition to providing a remedy for deprivations of constitutional rights, section 1983 also makes actionable violations of federal "Laws."[52] A violation of a federal statute is cognizable only when the violation trammels a right secured by federal law.[53] However, a statute is said to create a federal right only when "the provision in question is intended to benefit the putative plaintiff,"[54] unless it reflects merely a congressional preference for a certain kind of conduct rather than a binding obligation on the government unit,[55] or unless the putative plaintiff's interest is too vague and amorphous such that it is beyond the competence of the judiciary to enforce.[56]

(v) " . . . shall be liable . . . in an action at law, Suit in equity, or other proper proceeding for redress . . . "

There is no requirement that the plaintiff sue in federal court because state courts have concurrent jurisdiction,[57] ]. ***Howlett v. Rose, 496 U.S. 356 (1990). Of course, a defendant in state court may remove to federal court. 28 U.S.C. § 1441.*** and the usual rule is exhaustion of administrative and judicial state remedies is not a prerequisite to a section 1983 action.[58] ***Monroe v. Pape, 365 U.S. 167, 183 (1961)(exhaustion of judicial remedies is not a prerequisite); Patsy v. Florida Board of Regents, 457 U.S. 496, 501 (1982)(exhaustion of administrative remedies is not a prerequisite).*** Also, the existence of concurrent state remedies is not a bar to a section 1983 action.[59] ***Zinermon v. Burch, 494 U.S. 113, 124 (1990).*** With respect to the extent of damages available, the Supreme Court has noted that the basic purpose of a section 1983 damages award is to compensate the victims of official misconduct, and therefore held that there is no limit on actual damages if they can be proven.[60] But where they are not proved, only nominal damages of $1.00 may be awarded.[61] Punitive damages may also be awarded, but not against a municipality.[62] Injunctive relief is also permitted.[63] 42 U.S.C. § 1983.

III. DEFENSES AND IMMUNITIES

States and state agencies are entitled to Eleventh Amendment immunity in federal court,[64] but local governments have no immunity from damages flowing from their constitutional violations, and may not assert the good faith of its agents as a defense to liability.[65] Further, state law sovereign immunity and state law limitations on damages do not protect local governments from liability under section 1983,[66] and state laws requiring pre-suit notification prior to initiating an action against the state or its subdivisions similarly do not apply.[67] Therefore, local governments are left in the unique and unhappy situation of being subject to suit without the benefit of any form of immunity.

In contrast to the distinct lack of immunity available to local governments, individual capacity defendants are protected by qualified immunity.[68] Qualified immunity is a powerful tool that shields individual officials who are performing discretionary activities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."[69] ]. ***Harlow, 457 U.S. at 817; Lassiter, 28 F.3d at 1149.*** A government official is entitled to qualified immunity unless his "act is so obviously wrong, in the light of preexisting law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing."[70] ]. ***Lassiter, 28 F.3d at 1149; Ensley v. Soper, 142 F.3d 1402, 1406 (11th Cir. 1998)***(the plaintiff must point to case law which predates the official's alleged improper conduct, involves materially similar facts, and truly compels the conclusion that the plaintiff had a right under federal law The qualified immunity inquiry is purely objective--the subjective intentions of the actor is irrelevant.[71] . A court should scrutinize a plaintiff's claim to determine if the

plaintiff states a constitutional claim at all, prior to analyzing whether the defendant is entitled to qualified immunity.[73]

.

[2]. Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305 (1986).
[3]. 365 U.S. 167 (1961).
[4]. See section II(ii), infra, for a discussion of the "under color of state law" requirement.
[5]. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).
[6]. Id.
[7]. Ex Parte Young, 209 U.S. 123 (1908).
[8]. Hafer v. Melo, 502 U.S. 25, 31 (1991); Kentucky v. Graham, 473 U.S. 159, 165 (1985).
[9]. Monell v. Dept. of Social Services of New York, 436 U.S. 658, 701 (1978).
[10]. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).
[11]. Id.
[12]. Hafer v. Melo, 502 U.S. 25 (1991).
[13]. City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985).
[14]. Government officials may be sued in their individual capacity. Such a suit does not represent a suit against the government entity for which he is associated. Kentucky v. Graham, 473 U.S. 159, 165 (1985). The failure to identify in which capacity a defendant is being sued is a critical pleading defect. Colvin v. McDougall, 62 F.3d 1316, 1318 (11th Cir. 1995).
[15]. Dean v. Barber, 951 F.2d 210 (11th Cir. 1992); Fed.R.Civ.P. 17(b). For example, Florida law provides that divisions of local governments, such as police departments, do not have the capacity to be sued. Florida City Police Department v. Corcoran, 661 So. 2d 409 (Fla. 3d DCA 1995).
[16]. Board of Regents v. Tomanio, 446 U.S. 478 (1980).
[17]. Section 1983's requirement that a person act "under color of any statute, ordinance, regulation, custom or usage of any State or Territory or District of Columbia" is commonly abbreviated as "under color of state law."
[18]. West v. Atkins, 487 U.S. 42, 49 (1988)(quoting United States v. Classic, 313 U.S. 299, 326 (1941)); Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982); Parratt v. Taylor, 451 U.S. 144, 152 (1970). However, in the only case in which the Supreme Court held that a government employee did not act under color of sate law, the Court held that a public defender does not act under color of state law while performing a lawyer's traditional function of representing criminal defendants. Polk County v. Dodson, 454 U.S. 312, 325 (1981).
[19]. Monroe v. Pape, 365 U.S. 167, 172 (1961).
[20]. Wyatt v. Cole, 504 U.S. 158, 162 (1992); Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982).
[21]. West v. Atkins, 487 U.S. 42 (1988); Ort v. Pinchback, 786 F.2d 1105 (11th Cir. 1986).
[22]. Lugar v. Edmondson Oil Co., 457 U.S. 922, 929 (1982).
[23]. Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part, Daniels v. Williams, 474 U.S. 327 (1986).
[24]. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-87 (1977).
[25]. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690-691, (1978). This "custom or policy" requirement has also been applied to private corporations who contract with the state to provide medical care to prisoners. Howell v. Evans, 922 F.2d 712, 723-24 (11th Cir.), order vacating appeal, 931 F.2d 711, 712 (11th Cir. 1991), partially reinstated and appealed sub nom, Howell v. Burden, 12 F.3d 190 (11th Cir. 1994).
[26]. Monell, 436 U.S. at 694.
[27]. Monell, at 691-695; Polk County v. Dodson, 454 U.S. 312, 325 (1981); Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985). Isolated unconstitutional incidents, without more, cannot bind a municipality. Oklahoma City v. Tuttle, 471 U.S. 808 (1985).
[28]. City of Canton v. Harris, 489 U.S. 378 (1989); Gold v. City of Miami, 1998 WL 54803 (11th Cir. 1998); Sewell v. Town of Lake Hamilton, 117 F.3d 488 (11th. Cir. 1997). However, where the employee's proper course of action "is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." Sewell, 117 F.3d at 490.
[29]. Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); Bryan County v. Brown, 520 U.S. 397 (1997). Who is a "final policymaker" is decided by reference to state law. Pembaur, at 483; McMillan v. Monroe County, 520 U.S. 781 (1997).

[30]. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). However, merely going along with the discretionary decisions made by subordinates is not a delegation to them of the authority to make policy. Id.
[31]. Greason v. Kemp, 891 F.2d 829, 836 (11th Cir. 1990); Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Zatler v. Wainewright, 802 F.2d 397, 401 (11th Cir. 1986).
[32]. Leatherman v. Tarrant County, 507 U.S. 163 (1993). There is, however, a heightened pleading standard for individual capacity claims. See note 83 infra, and accompanying text.
[33]. Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979); Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). Section 1983 does not provide for the vindication of rights secured by state law. Id. at 145-146; Almand v. DeKalb County, 103 F.3d 1510, 1513 (11th Cir. 1997).
[34]. U.S.CONST. amend. XIV, §1. The Fourteenth Amendment Due Process clause is a limitation on state power, while the Fifth Amendment Due Process clause limits federal power. Halinger v. Davis, 146 U.S. 314, 319 (1892).
[35]. Paul v. Davis, 424 U.S. 693, 701 (1976).
[36]. Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985); Baker v. McCollan, 443 U.S. 137, 145 (1979).
[37]. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); See also, Bishop v. Wood, 426 U.S. 341, 344 (1976).
[38]. Board of Regents, 408 U.S. at 576.
[39]. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).
[40]. Loudermill, 470 U.S. at 542.
[41]. Parratt v. Taylor, 451 U.S. 527, 543-544 (1981).
[42]. Daniels v. Williams, 474 U.S. 327 (1986).
[43]. Hudson v. Palmer, 468 U.S. 517, 533 (1984)("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the due process clause of the 14th amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy."). The Court later held that negligence does not constitute a "deprivation." Daniels v. Williams, 474 U.S. 327 (1986). See also, Zinermon v. Burch, 494 U.S. 113, 132 (1990).
[44]. Zinermon, 494 U.S. at 132.
[45]. DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989); Santamorena v. Georgia Military College, 147 F.3d 1337, 1339-1340 (11th Cir. 1998). As with all actions predicated upon a violation of the United States Constitution, in order to state a claim for a deprivation of due process, "state action" must be present. The eleventh circuit has recognized three primary tests to determine whether the actions of a private entity constitute state action: (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. National Broad Co. v. Communications Workers of Am., 860 F.2d 1022, 1026 (11th Cir. 1988).
[46]. Collins v. City of Harker Heights, Texas, 503 U.S. 115, 128 (1992); Rymer v. Douglas County, 764 F.2d 796, 801 (11th Cir. 1985).
[47]. Collins, 503 U.S. at 125("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."). See also, County of Sacramento v. Lewis, 523 U.S. 833 (1998)(high speed police chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability for violation of substantive due process); Albright v. Oliver, 510 U.S. 266, 271-272 (plaintiff could not make out substantive due process claim for alleged prosecution without probable cause because Fourth Amendment is more appropriately considered); Graham v. Connor, 490 U.S. 386, 394 (1989)(claims of force arrest by police officer during arrest or detention cannot state a substantive due process claim--it is more appropriately analyzed under Fourth Amendment); McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994)(in non-legislative cases, only procedural due process claims are available to pretextually terminated employees).
[48]. See note 46, supra, and accompanying text.
[49]. McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994).
[50]. Palko v. Connecticut, 302 U.S. 319, 325 (1937). For example, the Supreme Court has held that the Fourth Amendment proscription against unreasonable searches and seizures, Mapp v. Ohio, 367 U.S. 643 (1961), and the Sixth Amendment right to a speedy public trial, Klopfer v. North Carolina, 386 U.S. 213 (1967), apply to the states.

[51]. Albright v. Oliver, 510 U.S. 266, 273 (1994); Graham v. Connor, 490 U.S. 386, 395 (1989).
[52]. Maine v. Thiboutot, 448 U.S. 1 (1980).
[53]. Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 101, 106 (1989) ("Section 1983 speaks in terms of 'rights, privileges, or immunities,' not violations of federal law.").
[54]. Id.
[55]. Pennhurst State School and Hospital v Halderman, 451 U.S. 1, 19 (1981).
[56]. Golden State, 493 U.S. at 106 (quoting Wright v. Roanoke Redevelopment & Hous. Auth., 479 U.S. 418, 431-32 (1987)). See also, Maynard v. Williams, 72 F.3d 848, 851 (11th Cir. 1996).
[57]. Howlett v. Rose, 496 U.S. 356 (1990). Of course, a defendant in state court may remove to federal court. 28 U.S.C. § 1441.
[58]. Monroe v. Pape, 365 U.S. 167, 183 (1961)(exhaustion of judicial remedies is not a prerequisite); Patsy v. Florida Board of Regents, 457 U.S. 496, 501 (1982)(exhaustion of administrative remedies is not a prerequisite). But see, Younger v. Harris, 401 U.S. 37 (1971)(a federal plaintiff is barred from seeking declaratory or injunctive relief relating to ongoing state criminal judicial proceedings); Heck v. Humphrey, 512 U.S. 477 (1994)(plaintiff must prove that a conviction or sentence has been reversed prior to recovering damages for unconstitutional conviction or imprisonment); 42 U.S.C. § 1997e (a prisoner's civil rights lawsuit may be delayed up to 180 days to require the prisoner to exhaust administrative remedies).
[59]. Zinermon v. Burch, 494 U.S. 113, 124 (1990).
[60]. Carey v. Piphus, 435 U.S. 247 (1978).
[61]. Farrar v. Hobby, 506 U.S. 103, 112 (1992); Carey v. Piphus, 435 U.S. 247, 266-267 (1978).
[62]. Smith v. Wade, 461 U.S. 30 (1983); City of Newport v. Fact Concerts, 453 U.S. 247 (1981). A municipality may, however, be jointly and severally liable. Finch v. City of Vernon, 877 F.2d 1497 (11th Cir. 1989).
[63]. 42 U.S.C. § 1983.
[64]. Edelman v. Jordan, 415 U.S. 651 (1974). But as discussed above, because states are not "persons" under the statute, they cannot be sued in either state or federal court. See note 6, supra, and accompanying text.
[65]. Owen v. City of Independence, MO, 445 U.S. 621 (1980); Monell v. Dept. of Social Services of New York, 436 U.S. 658, 699-700 (1978).
[66]. Howlett v. Rose, 496 U.S. 356 (1990); Hamm v. Powell, 874 F.2d 766, 770 (11th Cir. 1989).
[67]. Felder v. Casey, 487 U.S. 131 (1988).
[68]. Harlow v. Fitzgerald, 457 U.S. 800 (1982). See also, Anderson v. Creighton, 483 U.S. 635 (1987); Lassiter v. Alabama A & M University Board of Trustees, 28 F.3d 1146 (11th Cir. 1994)(en banc).
[69]. Harlow, 457 U.S. at 817; Lassiter, 28 F.3d at 1149.
[70]. Lassiter, 28 F.3d at 1149; Ensley v. Soper, 142 F.3d 1402, 1406 (11th Cir. 1998)(the plaintiff must point to case law which predates the official's alleged improper conduct, involves materially similar facts, and truly compels the conclusion that the plaintiff had a right under federal law).
[71]. Crawford-El v. Britton, 523 U.S. 574 (1998); Anderson v. Creighton, 483 U.S. 635, 641 (1987); Harlow v Fitzgerald, 457 U.S. 800 (1982).
[72]. "One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." Siegert v. Gilley, 500 U.S. 226, 232 (1991). See also, Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991).
[73]. Siegert v. Gilley, 500 U.S. 226 (1991); GJR Investments Inc. v. Escambia County, 132 F.3d 1359, 1367 (11th Cir. 1998). Courts should not assume that the plaintiff states a constitutional claim simply to get to the qualified immunity issue. Siegert, 500 U.S. at 232.
[74]. Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826-27 n.4 (11th Cir. 1997)(en banc). "Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." Id. at 827.
[75]. Harlow, 457 U.S. at 815.
[76]. Behrens v. Pelletier, 516 U.S. 299, 313 (1996); Hunter v. Bryant, 502 U.S. 224, 228 (1991); Stone v. Peacock, 968 F.2d 1163, 1166 (11th Cir. 1992)(if there are disputed factual issues regarding qualified immunity that a jury should resolve, special interrogatories would be appropriate).
[77]. Hunter v. Bryant, 502 U.S. 224, 228 (1991). A defendant official may assert the qualified immunity defense in 12(b)(6) motion for failure to state a claim, as an affirmative defense in a 12(c) request for

judgment on the pleadings, and on a Rule 56(e) summary judgment motion. Ansley v. Heinrich, 925 F.2d 1339, 1347 (11th Cir. 1991).

[78]. A defendant in state court does not necessarily have the right to an interlocutory appeal. Johnson v. Fankell, 520 U.S. 911 (1997). But see, Fla.R.App.P. 9.130(a)(3)(C)(viii).

[79]. Mitchell v. Forsyth, 472 U.S. 511, 525-26 (1985). However, a defendant may not appeal the denial of a summary judgment motion on the issue of qualified immunity if the denial was based solely upon the existence of disputed factual issues, as opposed to a finding that the law was not clearly established, or that the defendant did not act objectively reasonably. Johnson v. Jones, 515 U.S. 304 (1995).

[80]. Johnson v. Fankell, 520 U.S. 911 (1997)("[I]f [qualified immunity] is found applicable at any stage of the proceedings, it determines the outcome of the litigation by shielding the official from damages liability); Behrens v. Pelletier, 516 U.S. 299, 305-11 (1996). The other claims that remain for trial may consist of a claim against the official in his official capacity. Id.

[81]. Crawford-El v. Britton, 523 U.S. 574, 598 (1998)("If the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery"); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery.").

[82]. Summit Medical Associates, P.C. v. James, 1998 WL 125776 (M.D.Ala. 1998)(citing Goshtasby v. Board of Trustees of Univ. of Ill., 123 F.3d 427 (7th Cir. 1997))(relating to appeal of Eleventh Amendment immunity).

[83]. GJR Investments, Inc. v. Escambia County, 132 F.3d 1359, 1367 (11th Cir. 1998).

[84]. See, Richardson v. McKnight, 521 U.S. 399 (1997)(private prison guards are not entitled to qualified immunity); Wyatt v. Cole, 504 U.S. 158 (1992)(private individuals who invoked state replevin, garnishment, or attachment statutes were not entitled to qualified immunity). However, the Supreme Court did not "foreclose the possibility that private defendants . . . could be entitled to an affirmative defense based upon good faith and/or probable cause or that § 1983 suits against private, rather than governmental, parties could require plaintiffs to carry additional burdens." Wyatt, 504 U.S. at 169.

[85]. See, McDuffie v. Hooper, 982 F.Supp. 817 (M.D. Ala. 1997)(private corporate health care providers who contract with government agencies are not entitled to qualified immunity); Hartman v. Correctional Medical Services, Inc., 960 F.Supp 1577, 1582 (M.D. Fla. 1996); Smith v. United States, 850 F.Supp 984, 986 (M.D. Fla. 1994). But see, Blumel v. Mylander, 954 F.Supp 1547, 1560 (M.D. Fla. 1997).

[86]. Supreme Court of Virginia v. Consumers Union, 446 U.S. 719 (1980); Tenney v. Brandhove, 341 U.S. 367 (1951). However, individual legislative immunity does not apply where the decision is an application of policy to a specific party. In that instance, the act is said to be administrative as opposed to legislative. Crymes v. DeKalb County, 923 F.2d 1482, 1486 (11th Cir. 1991).

[87]. 42 U.S.C. § 1983 was amended in 1996 to provide judicial officers with immunity from injunctive relief. This amendment partially overruled Pulliam v. Allen, 466 U.S. 522 (1984), which provided that judges were immune from suits for damages, but not injunctive relief.

[88]. Prosecutors are entitled to immunity for activities that are "intimately associated with the judicial phase of the criminal process," but a prosecutor engaged in investigative or administrative activities is only entitled to a good faith defense. Imbler v. Pachtman, 424 U.S. 409, 430 (1976). See also, Kalina v. Fletcher, 522 U.S. 118 (1997).

[89]. Board of Regents v. Tomanio, 446 U.S. 478, 483 (1980).

[90]. Wilson v. Garcia, 471 U.S. 261 (1985). But accrual of the statute of limitations is governed by federal law, while tolling of the statute of limitations is governed by state law. Mullinax v. McElhenney, 817 F.2d 711, 716 n.2 (11th Cir. 1987). See also, Hardin v. Straub, 490 U.S. 536 (1989); Owens v. Okure, 488 U.S. 235 (1989).

[91]. 42 U.S.C. § 1988.

[92]. One who recovers nominal damages is not a prevailing party. Farrar v. Hobby, 506 U.S. 103, 114 (1992). The Court reasoned that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. Id. at 114 (citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). Also, see Marek v. Chesny, 473 U.S. 1 (1985), for a discussion of the interplay between 42 U.S.C. § 1988 and the offer of judgment provision contained in Fed.R.Civ.P 68.

[93]. Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421 (1978).



FROM: (646) 740-9141
Neelam Uppal
1370 Broadway
# 504
New york NY 10018
US

SHIP DATE: 14AUG17
ACTWGT: 0.40 LB
CAD: 6995465/SSFD1802
DIMMED: 13 X 10 X 1 IN

TO The Cleck U.S District Court
SDNY, Prose Intake Unit
500 Pearl Street, Room 200

New york NY 10007 (US)
(646) 740-9141 REF:
INV:
PO: DEPT:

FedEx Ground

G

TRK# 7799 7398 7076

DSR
10007

9622 0015 6 (000 000 0000) 0 00 7799 7398 7076