UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Neelam T. Uppal,

Case No.: 1:16-CV-3038
Jury trial Requested

v.

FL DOH,
NEW YORK STATE DEPARTMENT OF HEALTH
TIMOTHY MAHER,
CARLTON FIELDS LAW FIRM
LINDA PRESCOTT WILSON,
STEVEN GRABIEC,
PETER S. KOENIG, SR,
JOHN A, D'ANNA,
RICHARD D. MILONE
_____/

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-1-17

## AMENDED COMPLAINT

### NATURE OF ACTION

This is an action by Plaintiff, Dr. Neelam Uppal (hereafter "Dr. Uppal" or "Plaintiff") to redress actions taken individually and collectively by Defendants, Florida Department of Health, New York State Department of Health, Law firm of Carlton Fields, and individually by Mr. Timothy Maher, Chief Hearing Officer, and all Hearing officers for the Administrative Review Board, (hereafter "Defendants") based on

## CAUSES OF ACTION

Plaintiff brings this action under Sexual harassment, discrimination and retaliation pursuant to Title VIII and Title VII of the Civil Rights Act of 1964 as amended. Plaintiff, Dr. Neelam Uppal, already has lawsuit pending against New York State department of Health.

Plaintiff brings this action to correct unlawful employment practices on the basis of gender (female), race (Indian) national origin (Indian) hostile work environment, and retaliation for engaging in protected EEO activity. This action seeks appropriate relief to Plaintiff, who was adversely affected by such discriminatory practices.

The unlawful employment practices of the Defendant complained of herein have adversely affected the terms, conditions, and privileges of the plaintiff's employment in violation of Title VII of the Civil Rights Act of 1964, as amended and the Florida Civil Rights Act. 42 U.S.C. §2000(e) *et seq.*; 42 U.S.C.A. §1981a. The primary federal statute under which lawsuits is filed against state and local law enforcement officers for violating a person's constitutional rights is Title 42 U.S.C. Section 1983.

"Title 42 U.S.C. Section 1983 provides as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress."

The purpose of the statute "is to deter state actors from using their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such

deterrence fails.See Wyatt v. Cole, 504 U.S. 158, 161 (1992). However, "a victim of a constitutional violation by federal officers may (in certain circumstances) bring a suit for money damages against the officers in federal court," even though no statute exists granting such a right.8  This type of lawsuit is referred to as a Bivens action, after the 1971 Supreme Court case of Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics.9  Similar in purpose to section 1983, the purpose of a Bivens action is to "deter federal officers ... from committing constitutional violations."10  While the Bivens decision addressed a violation of the Fourth Amendment, the Supreme Court has also "recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, ... and the Cruel and Unusual Punishment Clause of the Eighth Amendment."11  However, the Supreme Court has responded cautiously to suggestions that Bivens be extended to cover constitutional violations other than those noted.12  While section 1983 and Bivens apply to different actors, the analysis in either type of suit is the same, with appellate courts generally "incorporat[ing] section 1983 law into Bivens suits." Ellis v. Blum, 643 F.2d 68, 84 (2d Cir. 1981)

Qualified immunity "is an immunity from suit rather than a mere defense to liability," see Mitchell v. Forsyth, 472 U.S. 511, 526 (1985 and entitles an officer "not to stand trial or face the other burdens of litigation." see Saucier v. Katz, 533 U.S. 194, 200 (2001) The doctrine is designed to protect "all but the plainly incompetent or those who knowingly violate the law."see Malley v. Briggs, 475 U.S. 335, 341 (1986) "The rationale behind qualified immunity for police officers is two-fold - to permit officers to perform their duties without fear of constantly defending themselves against insubstantial claims for damages and to allow the public to recover damages where officers unreasonably invade

or violate" a person's constitutional or federal legal rights.see Green v. City of Paterson, 971 F. Supp. 891, 901 (D.N.J. 1997)(citation and internal quotation marks omitted); see also Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995)(Qualified immunity "serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances")(citation omitted  Law enforcement officers are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." See 18Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In deciding whether to grant an officer qualified immunity, courts use a two-part analysis. This analysis "is identical under either section 1983 or Bivens." See Wilson v. Layne, 526 U.S. 603, 609 (1999)  First, the court must determine whether a constitutional violation occurred; if no violation has occurred, that ends the inquiry.21  Saucier, 533 U.S. at 201  If a constitutional violation can be established, the court must then decide whether the right was "clearly established" at the time of the violation. See Id "Deciding the constitutional question before addressing the qualified immunity question … promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public."See Wilson, 526 U.S. at 609  In addressing what is meant by the term "clearly established," the Supreme Court has stated:

"Clearly established" for purposes of qualified immunity means that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified

immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."Id at 614-615

Although courts differ, typically, a right is "clearly established" for qualified immunity purposes where the law "has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state in which the action arose."see Norwood v. Bain, 166 F.3d 243, 252 (4th Cir.), cert. denied, 527 U.S. 1005 (1999); see also Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998)(citation omitted);Durham v. Nu'Man, 97 F.3d 862, 866 (6th Cir. 1996)(citation omitted) In these circumstances, the decisions "must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." see Durham, 97 F.3d at 866 (citation omitted "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent."See Anderson, 483 U.S. at 640 (citations and internal citation omitted "The determination whether a right was clearly established at the time the defendant acted requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident." (Exhibit A). (See Kinney v. Weaver, 301 F.3d 253, 263 (5th Cir. 2002)(citation and internal quotation marks omitted)

Other Cause of action are under

1.      See attached EEOC –Title VII

2.      See Civil rights complaints,

3.      False Defamation of character.-A false or offensive statement, either verbal or written, about the plaintiff was made by the defendant

4.      The defendant made such statement to a third party (someone other than the plaintiff)

5.      The defendant acted negligently or with malice in making such statement

6.      The plaintiff suffered damages, including damage to his reputation specifically caused by the defamatory statement-

7.      Libel

8.      Slander

9.      Putting Plaintiff in False light

10.     Conspiracy

11.     Corruption

12.     Fraud-The representation was false

13.     When the representation was made, the defendant knew it was false, or made a positive or compelling assertion without having knowledge of the truth

14.     The defendant made the representation with the intent of causing the plaintiff to act

15.     The plaintiff acted, relying on the defendant's false representation

16.     The plaintiff was damaged or suffered injury because of the act or represent

17.     Harassment

18.     Tortuous Interference with Business

19. Perjury

20. Malicious prosecution

21. Intentional or negligent infliction of emotional distress-The actions or conduct of the defendant were extreme and outrageous

22. The defendant acted intentionally and/or recklessly

23. The defendant's actions or conduct caused severe emotional distress to the plaintiff

## JURISDICTION AND VENUE

1. That this action is brought to remedy discrimination on the basis of gender (female), race (Indian) national origin (Indian) hostile work environment, and retaliation in terms, conditions and privileges of employment and to remedy retaliation against her for activity protected under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000 et seq., 42 U.S.C.A. §1981a, as well as Florida law and the Florida Civil Rights Act. , Title 42 U.S.C. Section 1983

2. That declaratory relief, damages, attorney fees and other appropriate legal and equitable relief are sought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000 et seq., 42 U.S.C.A. §1981a, as well as Florida law, Florida Civil Rights Act, Fla. Stat.

§760 *et. seq.* Title 42 U.S.C. Section 1983

3. On or about , 2010, this Court granted Plaintiff right to suit.

## PARTIES

4. Plaintiff, Neelam Uppal, a female and a resident of Pinellas County, Florida, with her primary Business in New York filed charges of Retaliation , Sexual Harrasment and discrimination against New York State Department of Health with the Equal Employment Opportunity Commission ("E.E.O.C.") on or about May 1 , 2008, complaining of the acts of discrimination alleged herein. Copies of the charges are attached to the original Complaint as Exhibit 1.

5. Based on information and belief, PARTIES ARE

FL DOH, NEW YORK STATE DEPARTMENT OF HEALTH,, TIMOTHY MAHER, CARLTON FIELDS LAW FIRM, LINDA PRESCOTT WILSON, STEVEN GRABIEC, PETER S. KOENIG, SR,

JOHN A, D'ANNA, RICHARD D. MILONE

6. The EEOC has issued its Right to Sue letters herein. Plaintiff, Uppal was a licensed physician in Florida and new York living in Florida with Primary Business in new York at 1370 broadway, new York, NY 10018.

7. The State departments of health issues the license for the plaintiff to be able to work as an attending physician and was given privileges to work and treat patients to earn

her livelihood based on her training and qualifications..

8. Plaintiff filed applications to the licensing agencies to be able work for her her profession, who is a doctor.

9. Plaintiff is an individual and indirect employee of Defendants pursuant to Title VII.and VIII

10. Defendants, are hospitals located in the State of Florida, New York and are indirect employers within the definition of Title VII and VIII

11. Plaintiff, Dr. Uppal, has complied fully with all prerequisites to jurisdiction in this Court under Title VII. Jurisdiction of the Court is proper under §706(f)(3) of Title VII, 42 U.S.C. §2000(e)-5(f)(3) and 42 U.S.C.A. §1981a.

12. As the unlawful employment practices complained of herein occurred within this District, venue is proper in this District pursuant to §760(f)(3) of Title VII, 42 U.S.C. §2000e-5(f)(3) and 42 U.S.C.A. §1981a.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. All of the necessary administrative prerequisites for filing the above referenced claims have been met, as Plaintiff timely filed formal Complaints of Discrimination against Defendant's as follows:

Charge number:.

14. On or about June 21, 2016, EEOC Investigator , issued right to sue letter.for the charges.

## CLAIMS AND FACTUAL ALLEGATIONS

### *A. Facts and Counts relevant to Florida department of Health*

15.     Plaintiff, Dr. Uppal applied for and was given privileges by Defendant, on about 2002, to be an attending physician at the hospital.

16.     In order to be given privileges, Plaintiff signed a contract/agreement with the Hospital for appointment to the Medical Staff as an Attending Physician.

17.     As part of her privileges, Plaintiff was required to be on-call and treat patients that were admitted through the emergency room on a regular and routine basis.

18.     Dr. Steele started picking on plaintiff as an act of Discrimination and Sexual Harrasment. Dr. Desai with his partner had instructed Dr. Fineman and Dr. Levine to micromanage the plaintiff with the help of the case managers. This led to several false allegations. They were also instructed by the CEO, Robert Conroy for selective enforcement of rules on me. The nurses had started mistreating plaintiff's Patients as result of support of retaliation by the male doctors in power.. For example, when a consultant would make an error on dating notes the plaintiff was falsely alleged for either backdating or not seeing the patient. Plaintiff was put on supervision by a peer. It was noted on three separate occasions that it was other physicians making errors on dating. With full knowledge, the CEO, Robert Conroy said' " The rules apply only to Dr. Uppal and not the other physicians". He also claimed that he was taking action because my lawsuit against the other HCA hospitals. Florida's Governor Rick Scott was the CEO of HCA hospitals then.

19.     **No Peer review Hearing** was provided as required by the bylaws prior to any

adverse action. The action was taken by the executive committee solely based on unilateral false reporting against me to the committee . I was not allowed to be present at the hearing as required by the bylaws..

20.     Another doctor told me that he was told by the hospital attorney, Donald Schimdt to create issues corresponding to these to other hospitals and to the board of Medicine.

21.     False issues on medical record were created by FL DOH as per the instructions of Donald Schmidt, as I was suing the other HCA hospitals for acts of Sexual Harassment and Discrimination. So, he wanted to show me as a bad doctor and fabricate similar allegations to show that the management and administration were not violating any laws. Even though another physician, Dr. H. commented that *"You were not just discriminated but you were Tortured."*

22.     An Indian male physician, informed me that he was being instructed by the HCA's attorney to create and fabricate similar allegations as other hospitals by the attorney. Wells Fargo Bank, Saint Petersburg General hospitals' CEO and board used same attorney- Carlton Fields Law firm,.

23.     After the case settled The same Law firm continued their Sexual Harassment by Filing and collaborating with other attorneys to file fraudulent Foreclosure actions on my homes.

Wells Fargo had Carlton Fields Law firm, as their attorney to represent their Foreclosure action, who took my case with full knowledge and in possession of documentation by EEOC. The Law firm and physicians in power showed complete disregard of the law and mocked at the possible consequences in their acts of discrimination and severe retaliation.

loss of front pay and other career advancement, and all other damages flowing from such discriminatory treatment.

131.   But for Defendants' unlawful actions, conduct, and/or omissions, Plaintiff would not have been harmed.

## COUNT I
## DISCRIMINATION BASED ON GENDER, RACE, AND NATIONAL ORIGIN AND AGE

132.   The discriminatory treatment that Plaintiff received and suffered was based on Plaintiff's gender race, age, and/or national origin.

133.   Other similarly situated employees not of Plaintiffs' gender, race and/or national origin were not treated in the way Plaintiff was.

134.   A causal connection exists between Plaintiff's gender, race, and national origin and the discriminatory treatment to which Plaintiffs were subjected.

135.   Plaintiffs timely complained to Defendants about the discrimination to which Plaintiff was subjected because of Plaintiff's race, color, and/or national origin.

136.   Defendant failed to promptly and appropriately remedy the situation.

137.   Allowing the creation and perpetuation of criticisms and discipline directed against Plaintiff because of her gender, race, and/or national origin was in violation of Title VII, as well as the Florida Civil Rights Act, Fla. Stat. §760 et. seq.

138.   The Defendants' discriminatory practices described above deprived Plaintiff of her federally protected civil rights and otherwise adversely affected her status as an employee.

139. The unlawful employment practices described above were intentional, malicious, willful, wanton, callous, and/or showed reckless disregard for the Plaintiff's civil rights protected under Title VII, as well as the Florida Civil Rights Act, Fla. Stat. §760 et. seq..

140. As a direct result of Defendants' actions and omissions Plaintiff suffered monetary and non-monetary damages and losses.

3. In addition to the aforementioned, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages as a direct result of Defendant's actions and omissions. Other similarly situated employees outside Plaintiff's protected classes who had other disciplinary issues at other hospitals or incomplete application due to the faults of the medical staff office staff were not denied privileges at Palms of Pasadena.

4. Other similarly situated employees outside Plaintiff's protected classes did not have their credentialing paperwork delayed and neglected by the medical staff office.

5. Other similarly situated employees outside Plaintiff's protected classes who used the same nurse for dictation were not denied privileges at Palms of Pasadena.

6. Plaintiff's loss of privileges and resignation was reported to the National Practitioner's Data Bank, Florida Licensing board, and Department of Health as an adverse action.

7. Plaintiff was no longer allowed to admit patients at the hospital and was unable to be referred new patients when being assigned patients who were admitted to the hospital through the emergency room.

8.  Plaintiff was also denied participation by other hospitals, insurance companies and other institutions.

9.  Plaintiff suffered emotional harm as well as financial harm due to the actions of Palms of Pasadena with false defamation of character and now an administrative complaint against my license.

## COUNT II
## SEXUAL HARASSMENT, HOSTILE WORK ENVIRONMENT & ACTION ON MEDICAL LICENSE

141. Defendants, by and through Plaintiff's supervisors created and perpetuated a hostile work environment against the Plaintiff on the basis of her gender, race, national origin, Sexual Harassment and retaliation.

142. The hostile work environment was severe and pervasive, based on Plaintiff's gender, race, national origin, Sexual Harassment and retaliation. These incidents were offensive and unwelcomed by the Plaintiff.

143. Plaintiff was subjected to an objectively and subjectively hostile working environment by Defendants.

144. The hostile working environment was created and perpetuated by Defendants because of Plaintiff's gender, race, national origin, Sexual Harassment and retaliation.

145. The hostile working environment was created and perpetuated by Defendants because of Plaintiff's complaints about Sexual Harassment, gender, race, and national origin discrimination.

146. Defendants took no action to prohibit or end the harassment Plaintiff reported despite its' anti discrimination policies.

147. The creation of, tolerance, and continual perpetuation of a hostile work environment (gender), along with the other adverse disparate measures including Discipinary actions by Florida Department of Health, Revocation of Her Medical License by New York States Department of Health, Foreclosure on her homes and property etc., taken against Plaintiff violated Title VII, as amended, as well as the Florida Civil Rights Act, Fla. Stat. §760 et. seq.

148. As a direct result of Defendant's actions and omissions, Plaintiff suffered monetary and non-monetary damages. Plaintiff suffered actual and tangible damages from the hostile work environment created by Defendants and tolerated by the plaintiff.

149. In addition to the aforementioned, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, depression, loss of front pay and other career advancement, and all other damages flowing from such Harassment and discriminatory treatment.

150. But for Defendants' unlawful actions, conduct, and/or omissions, Plaintiff would not have been harmed.

## COUNT III
## RETALIATION

151. Plaintiff engaged in protected EEO activity when she complained to Defendants regarding the unlawful discrimination she suffered.

152. Defendants took no action to prohibit the reported harassment and discrimination by Plaintiff despite its' anti discrimination policies.

153. Defendants and their supervisors and employees continued to harass and discriminate against Plaintiff thereafter, and Plaintiff had her privileges terminated by Defendants shortly after she took actions to oppose unlawful treatment.

154. A reasonable person similarly situated to Plaintiff who reported acts of discrimination by a supervisor, and had privileges terminated shortly thereafter, is casually related and would be materially dissuaded from engaging in protected activity similarly to Plaintiff.

155. Defendant's actions in retaliating against Plaintiff because of her EEO activity constituted unlawful intentional discrimination in violation of Title VII, as amended, as well as the Florida Civil Rights Act, Fla. Stat. §760 et. seq.

156. But for Defendant's unlawful actions, conduct, and/or omissions, Plaintiff would not have been injured or harmed.

## COUNT IV
## DISCRIMINATION BASED ON GENDER, RACE, AND NATIONAL ORIGIN

157. The discriminatory treatment that Plaintiff received and suffered was based on Plaintiff's gender race, and/or national origin.

158. Other similarly situated employees not of Plaintiffs' gender, race and/or national origin were not treated in the way Plaintiff was.

159. A causal connection exists between Plaintiff's gender, race, and national origin and the discriminatory treatment to which Plaintiffs were subjected.

160. Plaintiffs timely complained to Defendants about the discrimination to which Plaintiff was subjected because of Plaintiff's race, color, and/or national origin.

161. Defendant failed to promptly and appropriately remedy the situation.

162. Allowing the creation and perpetuation of criticisms and discipline directed against Plaintiff because of her gender, race, and/or national origin was in violation of Title VII, as well as the Florida Civil Rights Act, Fla. Stat. §760 et. seq.

163. The Defendants' discriminatory practices described above deprived Plaintiff of her federally protected civil rights and otherwise adversely affected her status as an employee.

164. The unlawful employment practices described above were intentional, malicious, willful, wanton, callous, and/or showed reckless disregard for the Plaintiff's civil rights protected under Title VII, as well as the Florida Civil Rights Act, Fla. Stat. §760 et. seq..

165. As a direct result of Defendants' actions and omissions Plaintiff suffered monetary and non-monetary damages and losses.

166. In addition to the aforementioned, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other damages as a direct result of Defendant's actions and omissions.

## COUNT VI

Plaintiff re-iterates all the above facts and allegation for all the other remainder of the causes of Actions.

**WHEREFORE**, PLAINTIFF PRAYS that she be awarded the following relief:

a) A declaratory judgment that the conduct engaged in by Defendants was a violation of Plaintiffs legal rights under Title VII, Tile VIII,as amended, and the Civil Rights Act, ;

b) An order directing Defendant to pay an award of compensatory (pecuniary and non-pecuniary) damages up to the maximum amount permitted by any applicable federal or state law;

d) An order awarding punitive damages in an amount to be determined upon a finding of liability;

e) An order directing Defendant to pay reasonable attorneys fees and all costs of this litigation; AND

f) Such other and further relief as the Court may deem just.

## DEMAND FOR A TRIAL BY JURY

The Plaintiff, Dr. Uppal, by and through her undersigned attorney, requests a jury trial on all issues so triable.

*N. Uppal*

Neelam Uppal, Pro se

## CERTIFICATE OF SERVICE

167. I hereby certify that on November 30, 2017, that I electronically filed the foregoing document with the Clerk of the Court by using the court's CM/ECF system, upon counsel for the Defendants, who are registered ECF users

*N. Uppal*

USPS Priority Mail Express label (illegible handwritten sender/recipient details).