UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
NEELAM UPPAL,                                               :
                                                            :
                                      Plaintiff,            :
                                                            :
                    - against -                             :
                                                            :
NEW YORK STATE DEPARTMENT OF                                :
HEALTH, et al.,                                             :
                                                            :
                                      Defendants.           :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ___9/27/2019___

16-CV-3038 (VSB)

**OPINION & ORDER**

Appearances:

Neelam Uppal
Largo, Florida
*Pro se Plaintiff*

James M. Hershler
New York State Office of the Attorney General
New York, New York
*Counsel for Defendants New York State Department of Health and Timothy Mahar*

VERNON S. BRODERICK, United States District Judge:

Pro se Plaintiff Neelam Uppal brings this action against the New York State Department

of Health ("NYSDOH") and Timothy Mahar ("Mahar"),[1] asserting a myriad of claims relating to

the revocation of her medical license in Florida and the subsequent revocation of her medical

license in New York. Before me are (1) the motion of Defendants NYSDOH and Mahar to

dismiss Plaintiff's amended complaint, (2) Plaintiff's cross-motion for leave to further amend her

complaint, and (3) Plaintiff's motion to disqualify the New York State Attorney General from

---

[1] Plaintiff refers to Defendant Timothy Mahar spelling his last name as "Maher" in her pleadings. Defendants have consistently used the last name "Mahar" in their submissions. For purposes of this Opinion & Order I use "Mahar."

representation of Defendant Mahar. Because the New York State Attorney General does not have a conflict, Plaintiff's motion to disqualify the New York State Attorney General is DENIED. Because requests for leave to amend are to be granted liberally, Plaintiff's motion for leave to amend her complaint is GRANTED.[2] Because most of the claims asserted against NYSDOH and the Individual Defendants are barred by applicable doctrines of immunity, and because Plaintiff's Title VII claim fails based on the absence of allegations that NYSDOH and the Individual Defendants were her employers, Defendants' motion to dismiss is GRANTED.

## I.    **Background**[3]

This action arises out of the revocation of Plaintiff's Florida state medical license and the subsequent revocation of her New York state medical license. Plaintiff, who states that she maintains dual residences in Florida and New York, (Compl. 2),[4] alleges that beginning in 2002, she was "given privileges . . . to be an attending physician" at a hospital. (SAC 10.)[5] During her appointment to the hospital's staff, she experienced sexual harassment and discrimination. (*Id.* at 10–11.) She filed a case for sexual harassment and discrimination against her "prior employer,"

---

[2] However, to the extent that Plaintiff moves forward and further amends her complaint, she is directed not to add any claims directed at NYSDOH or any claims against the Individual Defendants premised on their conduct during her license revocation proceedings, as any such claims would be barred by the applicable doctrines of immunity.

[3] The following factual summary is drawn from the allegations contained in the various iterations of Plaintiff's complaint and other documents she has submitted in this litigation. In accordance with the mandate to read a pro se plaintiff's papers liberally, *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008), and consistent with the approach taken by other courts in this district, I find it appropriate to consider Plaintiff's allegations contained in submissions outside of her complaint, to the extent that they are consistent with and related to the complaint itself. However, I do also consider "matters of which judicial notice may be taken under [Federal Rule of Evidence] 201." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

I assume the allegations set forth in the Plaintiff's pleadings and papers to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[4] "Compl." refers to Plaintiff's Complaint, filed on April 25, 2016. (Doc. 1.) Because the paragraphs in the Complaint are inconsistently numbered, I cite to ECF page numbers for ease of reference.

[5] "SAC" refers to Plaintiff's Second Amended Complaint, filed on December 1, 2017. (Doc. 52.) Because the paragraphs in the Second Amended Complaint are inconsistently numbered, I cite to ECF page numbers for ease of reference.

without identifying her employer, and the FLDOH "then took an action in retaliation." (FAC 8).[6] The "action in retaliation" appears to refer to the revocation of Plaintiff's Florida medical license, which was eventually affirmed by the Florida Second District Court of Appeal on January 5, 2016. (*See* Pl.'s PI Aff. 2.).[7]

Subsequently, the New York State Board for Professional Medical Conduct "sought reciprocal discipline" and charged Plaintiff with "falsely answering 'no' to the question whether she had been subject to discipline elsewhere on her renewal application dated January 5, 2016." (*Id.*) The New York State Department of Health issued a statement of charges and notice of hearing against Plaintiff. (Compl. 4, Pls.' Opp. OSC ¶ 7.)[8]

At the hearing, Plaintiff alleges, NYSDOH "started fabricating allegations in . . . support" of the Florida DOH. (FAC 8.) Defendant Mahar, "associate counsel with the NYSDOH, intentionally made numerous false claims and misrepresentations against me during the proceedings before the NYSDOH," (Pl.'s Opp. OSC ¶ 11), which were "then agreed [to] by the rigged panel." (FAC 8.) The hearing panel made a determination that her license should be revoked, which was upheld by the Administrative Review Board of the New York State Department of Health. (Pl.'s PI Aff. 2.)

Plaintiff now asserts various claims of discrimination and retaliation against the Florida Department of Health, the New York State Department of Health, Timothy Mahar, Linda Prescott

---

[6] "FAC" refers to Plaintiff's Amended Complaint, filed on September 22, 2016. (Doc. 17.) The Amended Complaint does not contain paragraph numbering, so I cite to ECF page numbers.

[7] "Pl.'s PI Aff." refers to Plaintiff's reply in further support of her motion for a preliminary injunction, entitled "Answer Affidavit, Memorandum of Law For Order to Show Cause for Injunctive Relief," and filed on March 30, 2017. (Doc. 36.) Plaintiff also filed a portion of the same document in further opposition to Defendants' motion to dismiss on August 15, 2017. (Doc. 45.) This document does not contain paragraph numbering, so I cite to ECF page numbers.

[8] "Pl.'s Opp. OSC" refers to the Affidavit of Neelam Uppal in Further Response to Court's Order to Show Cause, filed on August 5, 2016. (Doc. 16.)

Wilson, Steven Grabiec, Peter S. Koenig, John A. D'Anna, and Richard Milone ("ARB Members," and together with Mahar, the "Individual Defendants"), the individuals who were members of the hearing panel that revoked her license. She also alleges discrimination and retaliation by the Carlton Fields Law Firm, which represented Wells Fargo in a foreclosure action against her, (SAC 23), and seeks $120 million in damages based on economic, reputational, emotional, psychological, and physical harm, (FAC 10).

## II.    **Procedural History**

Plaintiff, initially proceeding pro se, filed the Complaint in this action on April 25, 2016, requesting I enjoin the pending New York State Department of Health disciplinary proceedings against her. (Doc. 1.) She named as Defendants the New York State Department of Health, the Florida Department of Health, and the Florida Board of Medicine, and asserted various claims, including violations of her civil and constitutional rights and violations of state statutes. (*Id.*) On April 27, 2016, I issued an Order to Show Cause why the action should not be dismissed or transferred to the United States District Court for the Northern District of New York. (Doc. 3.) I also denied Plaintiff's request for immediate injunctive relief. (*Id.*)

Plaintiff then retained counsel, and the parties appeared for a show cause hearing on May 13, 2016. While my ruling was pending, Plaintiff filed a pro se amended complaint on September 22, 2016, asserting claims of employment discrimination and naming as Defendants the New York State Department of Health and Timothy Mahar. (Doc. 17.) In the amended complaint, Plaintiff dropped the Florida Defendants as well as her request for injunctive relief. (*Id.*) I concluded that the filing of the amended complaint mooted her request for emergency injunctive relief. (*See* Doc. 46, at 2 n.2.)

Plaintiff's counsel then moved to withdraw as Plaintiff's attorney, (Doc. 21), and I

granted the motion on January 19, 2017, (Doc. 26).

After Plaintiff's license was revoked by the administrative review board ("ARB") on January 31, 2017, Plaintiff moved for reconsideration of my order granting her attorney's motion to withdraw, (Doc. 27), and on February 14, 2017 filed an Order to Show Cause asking me to stay the ARB's revocation of her license, (Doc. 28). Defendants filed papers in opposition to Plaintiff's Order to Show Cause on March 24, 2017. (Docs. 32–34.) Plaintiff submitted a reply on March 30, 2017. (Doc. 36.)

On May 22, 2017, Plaintiff commenced a proceeding under Article 78 of the New York Civil Practice Law and Rules in the State of New York Supreme Court, Appellate Division, Third Judicial Department challenging the ARB's decision to revoke her license. (Doc. 37.)

On June 20, 2017, Defendants filed a motion to dismiss the amended complaint, (Doc. 38), along with an affirmation and memorandum of law in support, (Docs. 39–40). Plaintiff filed opposition papers on July 24, 2017, and refiled the same document on August 15, 2017. (Docs. 43, 44.) She also refiled her affidavit and memorandum of law in further support of her motion for a preliminary injunction on March 30, 2017. (Doc. 36.)

By order dated September 30, 2017, I denied Plaintiff's motion for reconsideration and her motion for a preliminary injunction. (Doc. 46.) On October 16, 2017, Plaintiff filed a notice of appeal from that order, (Doc. 48), as well as a motion for leave to amend her complaint, (Doc. 47). Defendants opposed that request by letter. (Doc. 49.) I did not grant Plaintiff's motion, but directed her to submit a copy of her proposed second amended complaint or a letter explaining how the proposed amendments would alleviate the deficiencies identified in Defendants' motion to dismiss. (Doc. 51.) Plaintiff filed her proposed second amended complaint on December 1, 2017, (Doc. 52), and Defendants submitted a letter in opposition on December 5, 2017, (Doc.

53). Plaintiff filed a letter objecting to Defendants' opposition on December 28, 2017. (Doc. 55.)

On February 26, 2019, Defendants' counsel informed me that Plaintiff's state court proceeding was no longer ongoing. (Doc. 59.) On November 1, 2018, the Appellate Division, Third Department, denied Plaintiff's motion to accept the record and for an extension of time to perfect the proceeding. (Doc. 59, at 2.) Plaintiff apparently moved to reargue and renew her application, which motion was denied by the Third Department on January 4, 2019. (*Id.* at 3.) An appeal to the Court of Appeals must be taken within 30 days of service of the judgment or order sought to be appealed from. N.Y. C.P.L.R. § 5513(a). Plaintiff does not appear to have taken a timely appeal from the Third Department's decision. (*See* Doc. 59.)

On April 1, 2019, Plaintiff filed an objection to the representation of Defendant Mahar by the New York State Attorney General. (Doc. 60.) On April 3, 2019, the Second Circuit issued an order affirming my denial of Plaintiff's motion for a preliminary injunction. (Doc. 62.)

III. **Statutory Framework for Revocation of Medical Licenses**

New York Public Health Law Section 230(10)(p) authorizes the State of New York to bring "cases of professional misconduct based solely upon a violation of [N.Y. Educ. L. § 6530(9)]." N.Y. Educ. L. § 6530(9)(d) further defines "professional misconduct" to include, among other things, the prior revocation of a license to practice medicine "by a duly authorized professional disciplinary agency of another state, where the conduct resulting in the revocation ... would, if committed in New York state, constitute professional misconduct under the laws of New York state." *Id.*

"Where another state's 'professional disciplinary agency' has found a New York-licensed physician guilty of professional misconduct, or revoked the physician's license in that state,

'charges may be prepared and served' on the physician, and the matter 'may be referred to a committee on professional conduct for its review and report of findings, conclusions as to guilt, and determination.'" *Mir v. Bogan*, No. 13 Civ. 9172(PGG), 2015 WL 1408891, at *10 (S.D.N.Y. Mar. 27, 2015) (quoting N.Y. Educ. L. § 6530(3)–(6); N.Y. Pub. Health L. § 230(10)(p)), *aff'd*, 668 F. App'x 368 (2d Cir. 2016). "In connection with such charges, the physician is entitled to 'appear personally before the committee on professional conduct.'" *Id.* (quoting N.Y. Pub. Health L. § 230(10)(p)). At the hearing before the committee, "an administrative officer . . . shall have the authority to rule on all motions . . . [and] objections." N.Y. Pub. Health L. § 230(10)(e). The physician "may be represented by counsel and may present evidence or sworn testimony on his or her behalf," although she is "strictly limited" to presenting "evidence and testimony relating to the nature and severity of the penalty to be imposed." *Id.* § 230(10)(p).[9] "Accordingly, where a physician faces charges of professional misconduct based on discipline imposed by another State's 'professional disciplinary agency,' the New York Medical Board relies on the findings of that state's adjudicative body by adopting and applying those findings against the individual in New York." *Mir*, 2015 WL 1408891, at *10 (internal quotation marks omitted). Relitigation in New York of the charges underlying the other state's disciplinary action is not permitted. *Id.* (citing N.Y. Pub. Health L. § 230(10)(p)). However, the determination of the committee on professional conduct may be reviewed by the ARB for professional medical conduct. N.Y. Pub. Health L. § 230(10)(p). The ARB is to "review whether or not the determination and the penalty are consistent with the findings of fact and conclusions of law and whether or not the penalty is appropriate and within the scope of

---

[9] There is one exception to this rule, not relevant to the charges that were filed against Plaintiff. *See* N.Y. Pub. Health. L. § 230(10)(p) ("Where the charges are based on the conviction of state law crimes in other jurisdictions, evidence may be offered to the committee which would show that the conviction would not be a crime in New York state.").

penalties permitted" by § 230-a. *Id.* § 230-c(4)(b). The ARB must issue an order based on its determination. *Id.* § 230-c(4)(d).

## IV. <u>Legal Standards</u>

### A. *Rule 12(b)(5)*

Rule 12(b)(5) authorizes a court to dismiss a complaint for insufficient service of process prior to a defendant filing an answer. *See* Fed. R. Civ. P. 12(b)(5). "In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If the plaintiff is able to demonstrate good cause, a district court must grant a plaintiff an extension of time for service. *See id.* Even where a plaintiff does not show good cause, however, district courts may exercise discretion to grant an extension of time to effect adequate service. *See Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016). In determining whether to grant a discretionary extension, courts look to "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service." *DeLuca*, 695 F. Supp. 2d at 66.

Once a defendant moves to dismiss pursuant to Rule 12(b)(5), the plaintiff bears the burden of establishing that service was adequate. *See Khan v. Khan*, 360 F. App'x. 202, 203 (2d

Cir. 2010) (summary order). Although "[a] process server's affidavit of service constitutes prima facie evidence of proper service," this evidence may be rebutted by "[a] defendant's sworn denial of receipt of service." *Rana v. Islam*, 305 F.R.D. 53, 63 (S.D.N.Y. 2015) (quoting *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)); *see also Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) ("Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served."). Courts may also look to materials outside of the pleadings when determining whether service was sufficient. *See Darden*, 191 F. Supp. 2d at 386 ("[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction.").

### B. *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*

*v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). The court may consider the complaint, documents attached to the complaint or incorporated by reference, or matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### C. *Pro Se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted). "In keeping with these precepts, although Rule 12(b)(6) generally restricts a court's consideration to the four corners of the complaint, pro se pleadings may be read together to determine whether a plaintiff conceivably could be entitled to relief." *Sathianathan v. Smith Barney, Inc.*, No. 04 Civ. 7122(DAB)(FM), 2006 WL 538152, at *13 (S.D.N.Y. Feb. 24, 2006) (collecting cases); *see also Sommersett v. City of New York*, No. 09 Civ. 5916(LTS)(KNF), 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations." (citation omitted)); *Ibok v. Sector*, No. 05 Civ.6584 MBM, 2006 WL 302336, at * 1 n.1

(S.D.N.Y. Feb. 9, 2006) ("The Court may consider the factual allegations in plaintiff's Response to supplement those in his complaint because of the liberal standard afforded to the pleadings of pro se litigants.").

Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (citation omitted).

### D. *Rule 15(a)(2)*

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading shall be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The "nonmovant bears the burden of showing prejudice, bad faith and futility of the amendment." *Amusement Indus., Inc. v. Stern*, No. 07 Civ. 11586(LAK)(GWG), 2014 WL 4460393, at *9 (S.D.N.Y. Sept. 11, 2014) (citation omitted). Absent a showing of bad faith or undue prejudice, however, "[m]ere delay . . . does not provide a basis for the district court to deny the right to amend." *Ruotolo*, 514 F.3d at 191 (citation omitted).

## V.    Discussion

### A.    *Plaintiff's Objection to Representation by the New York State Attorney General*

I first address Plaintiff's "Objection to Representation by NYS AG." (Pl.'s Obj. 1.)[10] Plaintiff requests that the Attorney General withdraw from representation of Defendant Mahar on the basis that its representation "is in Conflict of Interest in defending the public's interest as required by law under the duties of the Attorney General's [office]." (Pl.'s Obj. 1.) I construe this as a motion to disqualify the Attorney General from representing Defendant Mahar.

A district court may "disqualify counsel where necessary to preserve the integrity of the adversary process, typically in the following situations: (1) where an attorney's conflict of interests in violation of New York's Lawyer's Code of Professional Responsibility "undermines the court's confidence in the vigor of the attorney's representation of his client; or (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, . . . giving his present client an unfair advantage." *Grant v. Harvey*, No. 09 Civ. 1918(LTS)(KNF), 2012 WL 1958878, at *1 (S.D.N.Y. May 24, 2012) (quoting *Bd. of Educ. of N.Y.C. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (citations omitted)).

The New York State Attorney General "defend[s] all actions and proceedings in which the state is interested." N.Y. Exec. L. § 63(1). In addition, a state employee is generally entitled to representation by the Attorney General when he or she is sued under 42 U.S.C. § 1983 for acts within the scope of his employment. N.Y. Pub. Off. L. § 17(2)(a). The two exceptions to this rule are (1) when the Attorney General "determines based upon his investigation and review of

---

[10] "Pl.'s Obj." refers to Plaintiff's Objection to Representation by NYS AG, filed on April 1, 2019. (Doc. 60.)

the facts and circumstances of the case that representation by the attorney general would be inappropriate," and (2) "whenever a court of competent jurisdiction, upon appropriate motion or by a special proceeding, determines that a conflict of interest exists and that the employee is entitled to be represented by private counsel of his choice." *Id.* § 17(2)(b).

I find Plaintiff's argument that there is a conflict of interest in the Attorney General's representation of Defendant Mahar based on its concurrent obligation to "defend the public's interest" to be meritless. Implementing Plaintiff's theory of the law would result in the Attorney General being unable to ever defend the state against suits by citizens. This result would be plainly absurd and has been explicitly rejected by other courts. *See Grant*, 2012 WL 1958878, at *3 (rejecting incarcerated plaintiff's motion to disqualify attorney general representing Department of Corrections officials based on an argument that because the attorney general has a statutory duty to protect the interests of the state, he has a duty to protect the interests of the plaintiff (citing *Cliff v. Vacco,* 699 N.Y.S.2d 791, 791–92 (3rd Dep't 1999) ("While under certain defined circumstances the Attorney–General may institute a civil action to enforce the laws of the State, or may otherwise take action to protect the public interest, . . . no support [exists] for the proposition that this authority extends to the representation of private individuals such as [an inmate] in matters involving the enforcement of private rights." (alteration in *Grant*)))).

Accordingly, Plaintiff's motion to disqualify the Attorney General is denied.

### B.    *Plaintiff's Motion for Leave to Amend*

Plaintiff seeks leave to amend her complaint "based on change of circumstances and to add new defendants." (Doc. 47, at 1.) Specifically, she seeks to re-add the Florida Department of Health as a defendant, and asserts for the first time claims against the ARB members that

participated in affirming her license revocation. (*See* SAC 1.) Defendants oppose on the basis that Plaintiff's amendment would be futile and fails to cure the deficiencies present in her amended complaint. (*See* Doc. 53.)

Because requests for leave to amend are to be granted liberally, Plaintiff's motion is granted, and I will consider both her amended complaint and second amended complaint together. (*See supra* Section IV.C; *Sathianathan*, 2006 WL 538152, at *13.)

Plaintiff's first amended complaint contains two counts. The first is employment discrimination under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112–12117, and 18 U.S.C. §§ 241, 242. The second count asserts discrimination based on sex, nationality, age and race under 42 U.S.C. § 1983. (FAC 5–9.) Plaintiff's second amended complaint asserts the following federal claims: "sexual harassment, discrimination and retaliation pursuant to Title VIII and Title VII of the Civil Rights Act" and "unlawful employment practices . . . in violation of Title VII . . . [and] 42 U.S.C. 1981a." (SAC 2.)

Accordingly, because Plaintiff appears to intend to pursue the claims she asserted against NYSDOH and Mahar in her first amended complaint, their motion to dismiss is not moot.

## C.    *Motion to Dismiss*

Because I have granted Plaintiff's motion for leave to amend her complaint, I consider Defendants' motion to dismiss as comprising (1) their original motion and supporting documents seeking dismissal of the claims against NYSDOH and Mahar, and (2) their letter response in opposition to Plaintiff's motion for leave to further amend her complaint, arguing that Plaintiff's claims against Defendants Wilson, Grabiec, Koenig, D'Anna, and Milone are meritless.

As an initial matter, Plaintiff's claims under 18 U.S.C. §§ 241 and 242 must be dismissed for lack of jurisdiction because they are criminal statutes and do not provide a private right of action. *See Bender v. Gen. Servs. Admin.*, No. 05 Civ. 6459(GEL), 2006 WL 988241, at *1 (S.D.N.Y. Apr. 14, 2006). In addition, Title VIII refers to the Fair Housing Act, 42 U.S.C. §§ 3601–3631, *see, e.g.*, *Austin v. Town of Farmington*, 826 F.3d 622, 624 (2d Cir. 2016), and the only housing-related allegations in Plaintiff's papers are her statements that Carlton Fields, a law firm, represented Wells Fargo in a foreclosure action or actions against her. (SAC 11–12.) Therefore, this claim does not appear to be asserted against Defendants NYSDOH, Mahar, or the ARB Members, and I do not consider it in deciding their motion.

### 1. *Younger* Abstention

First, Defendants argue that Plaintiff's complaint should be dismissed based on *Younger* abstention. (Defs.' Mem. 5–9.) Under the doctrine of *Younger* abstention, "[w]hen there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution . . . [or] particular state civil proceedings that are akin to criminal prosecutions. . . ." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). Courts have found NYSDOH disciplinary proceedings to be civil enforcement proceedings subject to the *Younger* doctrine. *See Mir v. Shah*, No. 11 Civ. 5211(BSJ)(KNF), 2012 WL 3229308, at *3 (S.D.N.Y. Aug. 8, 2012); *Cameron v. Zucker*, No. 17-cv-3420 (JGK), 2017 WL 2462692, at *4 (S.D.N.Y. June 7, 2017) (finding that a medical disciplinary proceeding, like an attorney disciplinary proceeding, is subject to *Younger* abstention).

Plaintiff's state court proceeding was ongoing at the time Defendants filed their motion to dismiss, but it has now concluded. (*See* Doc. 59.)[11] Because "the state proceedings" that might

---

[11] I take judicial notice of the state court orders submitted by Defendants. *See Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 n.3 (2d Cir. 2000) (taking judicial notice of a final judgment and notice of appeal entered by a California state

have given rise to "*Younger* concerns are no longer pending," abstention is not required.  *See Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003).

Although Defendants do not raise it, I note that the *Rooker–Feldman* doctrine—which bars a district court from directly reviewing a state court judgment—also does not apply because the state court order was entered while this action was pending in the district court, not before it was filed.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) ("When there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court.").  Nor do issue preclusion or claim preclusion apply, because Plaintiff's challenge to the ARB's revocation of her license was denied for failure to timely perfect her appeal, not on the merits.  (*See* Doc. 59, at 2; *see also Proctor v. LeClaire*, 715 F.3d 402, 411, 414 (2d Cir. 2013) (A claim is precluded when there has been "a final judgment on the merits of an action" in which the same claim "w[as] or could have been raised";  an issue is precluded when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.").)  Since here the state case was not resolved on the merits, Plaintiff's claims are not precluded under these doctrines.  *See DiBlasio v. Novello*, 344 F.3d 292, 296 (2d Cir. 2003) (issue preclusion did not bar the plaintiff's claim that he was deprived of his medical license without due process, and where Article 78 proceeding did not address the substance of the plaintiff's constitutional claim); *cf. Anghel v. N.Y. State Dep't of*

---

court).  A court may take judicial notice of a fact that is not subject to reasonable dispute because it is either "generally known within the court's territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. § 201.  "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (citation omitted).

*Health*, 947 F. Supp. 2d 284, 292, 295–97 (E.D.N.Y. 2013) (*Rooker–Feldman* and collateral estoppel barred relitigation of plaintiff's license revocation where he had initiated an Article 78 proceeding and the Appellate Division, Third Department determined that plaintiff's due process arguments were unsupported by the record and issued a "detailed decision . . . dismissing the petition" a year before he brought his federal court action), *aff'd*, 589 F. App'x 28 (2d Cir. 2015).

Accordingly, I turn to Defendants' substantive arguments.

## 2. Federal Claims Against NYSDOH

### a. Eleventh Amendment Immunity

The Eleventh Amendment provides a jurisdictional bar to private suits against unconsenting states and their agencies. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990). Congress has the authority to override that immunity. *Dube*, 900 F.2d at 594. "[I]t is well settled that 42 U.S.C. § 1983 does not constitute an exercise of that authority," *id.* (citing *Quern v. Jordan,* 440 U.S. 332, 340–42 (1979)), and that New York has not consented to being sued under § 1983 in federal court, *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) (citing *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38–40 (2d Cir. 1977)). Section 1981 claims are also precluded by Eleventh Amendment immunity. *Wang v. Office of Prof'l Med. Conduct, N.Y.*, 354 F. App'x 459, 460 (2d Cir. 2009) (summary order) (citing *Singletary v. Mo. Dep't of Corr.,* 423 F.3d 886, 890 (8th Cir. 2005) (collecting cases in support of the proposition that "other circuits have uniformly held that a state is immunized from § 1981 liability under the Eleventh Amendment")). Similarly, New York's Eleventh Amendment immunity against ADA and ADEA claims has neither been abrogated by Congress nor waived by the state. *Nicolae v. Office of Vocational & Educ. Servs. for Individuals with Disabilities*, 257

F. App'x 455, 456–57 (2d Cir. 2007) (summary order) (citing *Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001) (sovereign immunity not abrogated for suits under Title I of the ADA, 42 U.S.C. §§ 12111–12117); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000) (sovereign immunity not abrogated for purposes of the ADEA)).

NYSDOH is a state agency. Accordingly, Plaintiff's claims against it under § 1981, § 1983, Title I of the ADA, and the ADEA must be dismissed for lack of subject matter jurisdiction. *See id.*; *Dube*, 900 F.2d at 594; *Sunnen v. N.Y. State Dep't of Health*, No. 12 Civ. 3417(CM), 2012 WL 6645942, at *6 (S.D.N.Y. Dec. 21, 2012) (dismissing § 1983 claim against NYSDOH as barred by the Eleventh Amendment), *aff'd in relevant part, vacated in part*, 544 F. App'x 15 (2d Cir. 2013).

### b. Title VII Claim

However, Title VII suits for employment discrimination are permitted against states and their agencies. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 448 (1976). Under Title VII, it is unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). "Consequently, the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006).

Here, Plaintiff has not alleged that NYSDOH employed her; only that it terminated her license in a discriminatory manner. Indeed, courts have held that an agency's licensing activities, without more, do not create an employer–employee relationship with its licensees. *See id.* at 377–78 (New York City school teachers had no Title VII claim against state agency for

administering allegedly discriminatory tests because agency did not employ them); *Sunnen v. New York*, No. 10 Civ. 372(PKC), 2010 WL 3912728, at *1 (S.D.N.Y. Sept. 10, 2010) (dismissing plaintiff's Title VII claim against NYSDOH for revoking his license on the basis that he did not contend he was employed by the agency); *Bonaby v. N.Y.C. Taxi & Limousine Comm'n*, No. 02 Civ. 5423(LAP), 2003 WL 21649453, at *4 (S.D.N.Y. July 14, 2003) (taxi driver did not state a claim against the New York City Taxi & Limousine Commission based on Commission's disciplinary actions against him); *Mikhail v. Bentley*, No. 96 CIV. 7987(JSM), 1997 WL 225799, at *2 (S.D.N.Y. May 6, 1997) (dismissing Title VII claim against medical licensing body for denying plaintiff's application for a medical license because defendant was not plaintiff's employer).

Therefore, Plaintiff's Title VII claim against NYSDOH must fail.

### 3. Federal Claims Against Timothy Mahar, Linda Prescott Wilson, Steven Grabiec, Peter S. Koenig, Sr., John A. D'Anna, and Richard Milone

Defendants argue that the claims against Defendant Mahar should also be dismissed, first for lack of personal jurisdiction based on Plaintiff's failure to serve him, and second for lack of subject matter jurisdiction based on prosecutorial immunity.

#### a. Personal Jurisdiction

Although NYSDOH waived service as to Plaintiff's Complaint, Plaintiff has not demonstrated that after she filed the Amended Complaint and added Mahar as a Defendant three years ago, that (1) she served Defendant Mahar or (2) Defendant Mahar waived service. There is no affidavit of service as to Defendant Mahar on the electronic docket, and Plaintiff has not made any assertions in her pleadings or opposition papers that she served him or that she had good cause for failing to serve him.

Because Plaintiff has not met her burden under Rule 12(b)(5), *see Khan*, 360 F. App'x. at

203, I find grounds for dismissal pursuant to Rule 12(b)(5) and Fed. R. Civ. P. 4(m) for failure to

timely effect service on Mahar.  In any event, even if the amended complaint were properly

served, because Plaintiff has failed to state a Title VII claim, the action would be dismissed

pursuant to Rule 12(b)(6.)

### b.  Title VII Claim

Plaintiff's Title VII claim against the Individual Defendants fails for the same reason it

fails against NYSDOH.  She has made no allegations showing that any of them served as her

employer, which is a "primary element" of a Title VII claim.  *See Gulino*, 460 F.3d at 370.

Rather, her claim rests on her allegations that Mahar was the prosecutor at her disciplinary

proceedings before NYSDOH, and that Wilson, Grabiec, Koenig, D'Anna, and Milone were

members of the ARB panel that approved the revocation of her license.  (FAC 8; SAC 1.)

Therefore, Plaintiff's Title VII claim against the Individual Defendants must be

dismissed.

### c.  Prosecutorial and Judicial Immunity

Finally, to the extent that Plaintiff is asserting damages claims against Mahar premised on

his role as the prosecutor at her disciplinary proceedings—that he "made constructive false,

fabricated allegations" against her that were then "agreed by the rigged panel," (FAC 8), and

against the ARB members who were on that panel—Defendants Wilson, Grabiec, Koenig,

D'Anna, and Milone—these claims are barred by absolute prosecutorial and judicial immunity.

Certain government officials enjoy absolute immunity from claims for damages arising

out of acts performed within the scope of their duties.  *See Imbler v. Pachtman*, 424 U.S. 409,

422 (1976) (prosecutors immune from claim brought under § 1983).  Although absolute

immunity traditionally protected only judges and prosecutors, it has been extended "to bar suits for money damages against agency officials who perform functions analogous to those of a prosecutor or judge." *Bogan*, 2015 WL 1408891, at *11 (citing *Butz v. Economou,* 438 U.S. 478, 512–17 (1978)), *aff'd*, 668 F. App'x 368 (2d Cir. 2016). Whether an official's function is analogous to that of a prosecutor or judge depends, in turn, on whether the proceeding bears enough of the "characteristics of the judicial process." *DiBlasio*, 344 F.3d at 297 (quoting *Butz*, 438 U.S. at 513). The Supreme Court has outlined six factors for courts to assess in determining whether a given disciplinary process is "characteristic of the judicial process":

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal."

*Id.* at 298 (quoting *Cleavinger v. Saxner,* 474 U.S. 193, 201 (1985) (citing *Butz,* 438 U.S. at 512)).

Although the Second Circuit has held that a summary suspension of a medical license is not a judicial proceeding whose administrators are entitled to immunity, *DiBlasio, id.* at 302, direct medical license revocation proceedings under N.Y. Pub. Health L. §230(10)(a)–(h) are sufficiently judicial that officials involved in those proceedings are entitled to absolute immunity, *Applewhite v. Briber*, 506 F.3d 181, 182 (2d Cir. 2007) (absolute immunity protects officials involved in a "state medical review board's disciplinary proceeding where . . . the individual charged has the right to be represented by counsel, to present evidence and to cross-examine witnesses, and where the board articulates its findings and conclusions in a binding order—as opposed to a mere recommendation—under a preponderance of the evidence standard") However, the Second Circuit has not yet considered whether absolute immunity

extends to officials involved in referral license revocation proceedings under N.Y. Pub. Health L. § 230(10)(p), which provides an individual the right to be represented by counsel and to present evidence, *id.*, and under which revocation decisions are reviewed by the ARB, which must review whether the determination and penalty are consistent with the findings of fact and conclusions of law of the disciplinary panel, and issue an order based on that determination. N.Y. Pub. Health L. § 230-c(4).  However, Judge Paul Gardephe addressed this question in *Mir v. Bogan*, 2015 WL 1408891, at *11.  After an exhaustive analysis of the six *Butz* factors as applied to Section 230(10)(p) referral proceedings, Judge Gardephe concluded that such proceedings "share enough of the 'characteristics of the judicial process' to merit absolute immunity for those officials . . . involved in such proceedings who are 'functioning in a manner sufficiently analogous to [that of] a judge or prosecutor.'"  *Id.* at *17 (quoting *DiBlasio*, 344 F.3d at 297–98).  As Judge Gardephe observed:

> Immunity is "necessary to assure that [officials involved in the revocation of medical licenses] can perform their respective functions without harassment or intimidation." *Butz*, 438 U.S. at 512. Permitting civil damage suits to proceed against such officials based on their role in revocation proceedings would severely undermine one of New York's most important state interests—its ability to license and discipline medical professionals and thereby to safeguard the public health. Individuals charged with this responsibility cannot be expected to properly perform their duties if they have a well-founded fear of retaliatory litigation.

*Id.* (internal citation and quotation marks omitted).  Although referral proceedings do not possess the features of a direct revocation described by the *Applewhite* court as "safeguards" of a judicial proceeding, 506 F.3d at 182, Judge Gardephe opined that:

> The fact that a licensee in a Section 230(10)(p) referral proceeding (1) does not have a right of cross-examination, and (2) is precluded from relitigating issues resolved by the "authorized professional disciplinary agency of another state," does not counsel against a grant of absolute immunity.  These matters go to the likelihood that a referral proceeding will result in an erroneous deprivation of a physician's license.  The key question for determining whether absolute immunity is appropriate, however, is whether a damages action against individual officials is

necessary to address any possible unconstitutional conduct by these officials. *Bogan*, 2015 WL 1408891, at *16.

I find Judge Gardephe's thorough reasoning and his conclusions persuasive, and I adopt them here. Defendant Mahar was the prosecutor at Plaintiff's license revocation proceedings premised on the revocation of her license in Florida, and Defendants Wilson, Grabiec, Koenig, D'Anna, and Milone were "hearing officers for the Administrative Review Board." (SAC 1.) Accordingly, they are entitled to absolute immunity against claims for damages based on their conduct within the scope of the proceedings, and to the extent that Plaintiff asserts such claims, they are dismissed with prejudice.

### 4. State Law Claims

In her Second Amended Complaint, Plaintiff asserts various pendent state claw claims. (SAC 6–7.) To the extent that she asserts these claims against NYSDOH, they are barred by the Eleventh Amendment. *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540–41 (2002) ("[T]he Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court.") Having reviewed her Second Amended Complaint, I find that Plaintiff makes no allegations as to Mahar and the ARB panel members that do not relate directly to their conduct during the license revocation proceedings. Accordingly, her state law claims against them are also barred pursuant to prosecutorial and judicial immunity, for the same reasons discussed above. *See Shmueli v. City of New York*, 424 F.3d 231, 238 (2d Cir. 2005).

### D. *Dismissal with Prejudice*

Claims brought pro se typically are dismissed without prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (unless there is no indication that the pro se plaintiff will be able to assert a valid claim giving rise to subject matter jurisdiction, leave to amend should be given). "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted).

Here, however, Plaintiff has had two opportunities to amend and the majority of her claims against NYSDOH and the prosecutor and hearing officers involved in her license revocation are barred by applicable doctrines of immunity. Plaintiff's claims under Title VII that are not so barred fail because neither NYSDOH nor the Individual Defendants were her employers. I see no indication that there are any facts Plaintiff could allege that would (1) establish that NYSDOH or the Individual Defendants were her employers within the meaning of Title VII; (2) give me jurisdiction over her remaining claims against NYSDOH; or (3) result in valid claims against the Individual Defendants involved in her license revocation hearing. Accordingly, Plaintiff's claims against NYSDOH are dismissed with prejudice to refiling in federal court, and Plaintiff's claims against Mahar, Wilson, Grabiec, Koenig, D'Anna, and Milone are dismissed with prejudice.

### VI. <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint, (Doc. 38), is GRANTED and Plaintiff's claims against NYSDOH, Mahar, Wilson, Grabiec, Koenig, D'Anna, and Milone are DISMISSED WITH PREJUDICE. An Order of Service as to the

remaining Defendants, the Florida Department of Health and Carlton Fields Law Firm, will be entered concurrently with this Opinion & Order.

The Clerk of Court is respectfully directed to terminate the motion pending at Document 38, and to mail a copy of this Opinion & Order to the pro se Plaintiff.

SO ORDERED.

Dated: September 27, 2019
     New York, New York

Vernon S. Broderick
United States District Judge